LILLIE E. SPAULDING v. LYMAN W. BLISS AND EUGENE W. DAVIS.

83    311
s47NW 210
129    127

*Malpractice—Evidence—Charge to jury.*

1. The plaintiff in a malpractice case was asked to state whether or not the pain in her knee and the difficulty that she had experienced from it, including the swelling, was, as far as she could tell by any feeling, connected with the point of injury where her leg was broken; the answer to which question is held to have been properly excluded, the witness not being an expert, and therefore not competent to testisfy as to what was the *cause* of such pain.

2. Where in a malpractice case the declaration alleges that in setting plaintiff's broken leg the defendant was guilty of negligence, and that he negligently and carelessly injured the ligaments of the knee, resulting in permanent lameness and deformity, a charge which treats the question at issue as one of neglect in the care of the broken limb, rather than as one of an injury to the knee, caused by such alleged negligence on the part of the defendant, is erroneous.

3. The court instructed the jury in a malpractice case that they were necessarily bound, independent of every other consideration, to adopt the testimony of the physicians and surgeons, when they came to determine whether, on the facts in the case, the defendant had treated the case in a proper form, and by the use of proper appliances, and in the same connection stated that no other witnesses than such physicians and surgeons had undertaken to testify on that subject; which instruction is held unobjectionable, it being the province of the other witnesses to give the facts as to the treatment and acts of the defendant, and

for the physicians and surgeons to say whether or not the same were proper.

Error to Saginaw. (Edget, J.) Argued October 22, 1890. Decided November 21, 1890.

Case. Plaintiff brings error. Reversed. The facts are stated in the opinion.

*Tarsney & Weadock,* for appellant, contended:

1. In support of the first assignment of error, counsel cited: Wood, Prac. Ev. § 147, p. 420; *Hyatt v. Adams,* 16 Mich. 199; *Johnson v. McKee,* 27 Id. 471; *Maclean v. Scripps,* 52 Id. 240.

2. As a jury cannot be instructed what weight to give to evidence, neither can they be instructed that they are bound to adopt the testimony of physicians and surgeons, or any class of witnesses; citing *Davis v. Gerber,* 69 Mich. 253; *Sheahan v. Barry,* 27 Id. 266; *Blackwood v. Brown,* 32 Id. 104; *Hall v. People,* 39 Id. 717, and cases cited.

*L. T. Durand (Hanchett, Stark & Hanchett,* of counsel, for defendants, contended:

1. The authorities cited in support of the first assignment of error do not support the right to ask the question the answer to which was excluded, but are in harmony with *Mayo v. Wright,* 63 Mich. 32, and are to the effect that the injured person may *describe* his symptoms and sufferings.

2. Where the fact is admitted or undisputed, and there is no conflict of evidence, the question is one of law, upon which direct instruction ought to be given; citing *Wisner v. Davenport,* 5 Mich. 504; and when there is a total want of evidence upon any essential point, the jury should be so charged distinctly; citing *Scripps v. Reilly,* 38 Mich. 22; and a party is entitled to specific charges upon the law applicable to each of the various hypotheses or combinations of facts which the jury from the evidence might legitimately find, and which have not been covered by other instructions; citing *Sword v. Keith,* 31 Mich. 255.

3. The jury were bound to adopt the testimony of the physicians and surgeons as to whether the method adopted and appliances used were proper, because no other witnesses were competent to give evidence on those subjects, and the jury have no right to decide such questions upon their own judgment; citing *Mayo*

*v. Wright*, 63 Mich. 40; *Wood v. Barker*, 49 Id. 298; *People v. Hall*, 48 Id. 490; *Evans v. People*, 12 Id. 38.

4. The presumption is that the defendants did their duty, and the plaintiff is bound to show affirmatively the contrary; citing *Hitchcock v. Burgett*, 38 Mich. 512; *Patten v. Wiggin*, 51 Me. 596–598.

MORSE, J. This is an action brought against the defendants, who are physicians, and were copartners in business at the time of the alleged malpractice, for which damages are claimed in this suit.

The plaintiff, who is a married woman, about 50 years of age, and by occupation a milliner and hair-dresser, met with an accident, by which her right leg was broken above the knee, the break being an oblique fracture about the lower third of the thigh-bone or *femur*. This injury happened on July 27, 1887, about 11 o'clock A. M. She was at her son's, outside of the city of Saginaw, and it was some hours before the broken leg was set. Dr. Bliss was sent for, but he was unable to be present, and Dr. Davis, with the assistance of Mr. Moore, a druggist, reduced the fracture. Dr. Davis soon afterwards went to the State militia encampment, at Brighton, and Dr. Bliss was himself hurt, so that he could not attend upon plaintiff. He sent Dr. Morse, who managed the case until Dr. Davis returned, about August 13, 1887. After that Dr. Davis had full charge of the plaintiff's case.

The declaration contains seven counts. The first alleges that defendants should have used splints and other appliances to hold the fractured and broken bones together in permanent position, and to aid in securing a cure of the plaintiff's injury, which she alleges they did not do in proper time.

The second count charges negligence on the part of the defendants in not putting on suitable plaster casts at

the proper time; she alleging that they wholly neglected their duty in that regard.

The third count alleges that the defendants did not use ordinary skill and care to secure the fractured bones of plaintiff's leg, and did not furnish counter-extension as soon as practicable after the bones had been set; and that they put on weights of too great weight, and furnished no counter-extension.

The fourth count charges that Dr. Morse put the splints on plaintiff's leg wrong, thereby causing her great pain.

The fifth count alleges a breach of duty on the part of the defendants in not ascertaining the full extent of the injury to the plaintiff's leg, and giving it proper and suitable treatment, alleging that her knee was injured in the fall, and that the defendants did not ascertain that fact, or do anything for her knee.

The sixth count alleges that defendants should have so cared for the knee as not to have injured it at the time of setting; but on the contrary plaintiff alleges that Mr. Davis and one L. G. Moore, a druggist, who accompanied him, used such force and violence, at the time of setting the leg, as to wrench and dislocate, and otherwise injure, the knee on the fractured leg.

The seventh count alleges that the defendants did not. attach the proper attachments and appliances in the proper manner to the injured leg of the plaintiff.

To this declaration the defendants pleaded the general issue, and the case came on for trial at the July term, 1889, and resulted in a verdict for the defendants.

There are five assignments of error. *First.* The plaintiff was asked the following question, which was objected to as incompetent:

" *Q.* State whether or not the pain in your knee and the difficulty that you have experienced from it, including

the swelling, was, so far as you could tell by any feeling, connected with the point of injury where your leg was broken.

"*The Court:* I think it is only competent for her to describe the symptoms; I think that is not a proper question.

"*Mr. Weadock:* Now describe the feeling of your limb between the point of injury in the knee and the point of injury at the fracture above the knee, as to whether or not there was any pain.

"*A.* Always pain in the knee,—always.

"*Q.* But was there a pain above the knee before you arrived at the point of fracture?

"*A.* Not so much as in the knee. I never suffered any pain in the fracture to amount to anything while I lay on my back, but in was all in my knee."

Plaintiff's counsel claimed on the trial that her knee was injured by the action of the physician and his assistant in setting the broken limb; that by the use of unnecessary force they wrenched the knee, and injured it by breaking or partially rupturing a ligament or ligaments. It is contended that the question ruled out, in view of this claim, was competent. We think she was permitted to testify as fully as the law allows to her symptoms and feelings. It was not her province to state conclusions. She could tell where her pains were, but she was not an expert, and could not, therefore, testify what was the cause of such pains. When she testified that she never suffered any pain of any amount in the fracture, but it was all in the knee, she was permitted to give her symptoms and her feeling as to where the pain was located, and from whence she felt it proceed. It was not competent for her to say whether or not it was connected with, or caused by, the fracture.

The other assignments relate to the charge of the court. It is insisted that the following instructions were erroneous:

"1. There is no evidence in the case that the setting

of the fracture of the thigh was a bad job, or a bad piece of work on the part of the defendants.

"2. The defendants have not neglected the performance of any duty which they were called upon to discharge with reference to this plaintiff.

"3. So, you are necessarily bound, independent of every other consideration, to adopt the testimony of the physicians and surgeons, when you come to determine whether, on the facts in this case, these defendants have treated the case in a proper form, and by the use of proper appliances.

"'4. There is no evidence that the broken bones of the thigh were not set in place just as they should be set when they healed.' I give that. I don't now recollect any evidence which conflicts with that statement."

The first and fourth can be considered together. Plaintiff's counsel claim that these instructions were misleading; and that the jury might understand, and probably did, that this reference to the job or work of setting the limb referred to the whole job and work of the defendants,—that the work of joining the bones in the leg, the putting on of splints, putting on of a plaster cast, the machinery for the extension and counter-extension of the leg and keeping the bones in place, the dressing of the limb, and all the other necessary things to be done about the work of the recovery of the patient and the proper healing of the limb, · were all one job or piece of work; and that, therefore, these instructions were equivalent to a statement to the jury that they must find for the defendants.

The charge must be taken as a whole, and a reference to it shows very plainly· that this was not the intention of the court, and that the jury could not have been misled to the extent claimed by these two clauses of the general charge. It will be remembered that the sixth count of the plaintiff's declaration alleges that due care was not exercised as to the knee at the time the leg was set, and that Dr. Davis, and Mr. Moore, the druggist,

used such force and violence, at the time of setting the leg, as to wrench and dislocate, and otherwise injure, the knee on the fractured leg. The other counts allege various acts of negligence in the care of the leg after the setting of the bones. The allegations in these other courts were submitted to the jury, and we think the jury must have clearly understood that they were not precluded from finding a verdict for the plaintiff upon any of these matters of neglect, if they found any such neglect.

But the jury might have been misled by this charge as to the allegations contained in the sixth count. If, as claimed by the plaintiff, in the reducing of the fracture and the setting of the bones of the broken thigh unnecessary force was used, and the ligaments of the knee broken or injured, the setting of the fracture was a "bad job." This count alleges that the defendants employed improper assistants to aid in reducing the fracture, and did not give them proper instructions,—

" But, on the contrary, knowingly selected unsuitable and unskillful persons to aid and assist them in the setting of said leg and the reducing of said fracture, to wit, one Lewis G. Moore, of the city of Saginaw; that said Lewis G. Moore was wholly incompetent, unskillful, and an improper person to aid and assist in the reducing of said fracture and the setting of said leg; that the said Lewis G. Moore wrongfully, negligently, and carelessly, and with great force and violence, pulled, turned, twisted, and wrenched the said fractured leg of said plaintiff more than was necessary to set the same, and thereby dislocated, broke, sprained, twisted, wrenched, and put out of place and injured the bones, joints, ligaments, muscles, arteries, cords, nerves, and flesh of said plaintiff's said kee, and of her right leg; that, by reason thereof, the said right leg of said plaintiff, including the said plaintiff's right knee, from thence hitherto has been and now is stiff, sore, swollen, deformed, and lame," etc.

Nowhere, in the charge of the court, do I find any

instruction which authorizes the jury to find that in the setting of the bones of the leg the defendants negligently and carelessly injured the ligaments of the knee. In speaking of the knee, of which the plaintiff chiefly and specially complained, the court treated the question at issue as one of neglect in the care of the broken limb, rather than as one of an injury to the knee, caused by the negligence of the defendants in setting the limb. This being the case, in other portions of his charge, when he instructed the jury that there was no evidence in the case that the setting of, the fracture was a "bad job," the jury were misled, and the instruction was erroneous, if there was in the case any testimony tending to show that the defendants were negligent and unskillful in handling the limb at the time of reducing the fracture, by means of which the knee was injured. We think there was such testimony.

As to the third objection to the charge of the court, it is not tenable. The court said, in connection with it, that—

"No other person, no other witness in this case, aside from the surgeons—the physicians—who have testified in the case, have undertaken to tell you what is proper practice, or what, under the present methods of surgery, would be proper practice in this given case."

It was for the others to give the facts as to the treatment and acts of the defendants, and it was for physicians and surgeons to say whether or not the same were proper.

The second objection culls language out of the charge which if standing alone would be error, but as it was given it was proper, to wit:

"And if you find, from the evidence in the case, that these several physicians, who attended upon the plaintiff, did exercise that ordinary degree of care and skill which I have defined, then the plaintiff is not entitled to recover;

the defendants have not neglected the performance of any duty which they were called upon to discharge with reference to this plaintiff."

For the error above noted, the judgment below must be reversed, and. a new trial granted, with costs of this Court to plaintiff.

CHAMPLIN, C. J., CAHILL and GRANT, JJ., concurred. LONG, J., did not sit.