BOCKOFF *v.* CURTIS.

1. PHYSICIANS AND SURGEONS — MALPRACTICE — PLEADING—CAUSE
   MAY NOT BE SUBMITTED ON THEORY DIFFERENT FROM THAT
   CHARGED IN DECLARATION.
   Where an action for malpractice was based upon the charge in the declaration that the treatment given by defendant was unskilful, careless, and negligent, the trial court was in error in also submitting the case to the jury

¹Physicians and Surgeons, *30 Cyc.* p. 1590.

under a second theory, viz., that, even if the treatment was proper, defendant would be liable if he did not tell plaintiff in advance what the consequences would be, since, under the latter theory, a different cause of action was stated.

2. PLEADING — AMENDMENT STATING CAUSE OF ACTION BARRED BY STATUTE NOT PERMISSIBLE.

It is not within the discretion of a trial court to permit an amendment to the declaration which states a cause of action barred by the statute of limitations.

3. EVIDENCE—WITNESSES—DEDUCTIONS OF WITNESSES.

Where the court or jury can make their own deductions, they may not be made by those testifying.

4. SAME—EXPERT WITNESSES—OPINIONS.

If a witness is competent to form an opinion which the jury could not, or which an ordinary witness could not, his opinion may be received.

5. SAME—TRIAL—HYPOTHETICAL QUESTION.

There was no error in submitting to a doctor a hypothetical question which was but another way of inquiring whether the alleged negligent treatment given by defendant was proper.

Error to Wayne; Brennan (Vincent M.), J. Submitted October 14, 1927. (Docket No. 2.) Decided February 14, 1928.

Case by Jacob Bockoff against Dr. J. D. Curtis for malpractice. Judgment for plaintiff. Defendant brings error. Reversed.

*Lodge & Brown,* for appellant.

*William Henry Gallagher (Edward J. Fallon,* of counsel), for appellee.

SHARPE, J. On June 8, 1923, the plaintiff visited the office of Dr. George Potter, seeking relief from pain due to sciatic neuritis. After examination, the

[2]Pleading, 31 Cyc. p. 413; [3]Evidence, 22 C. J. § 596; [4]Id., 22 C. J. § 594 (Anno); [5]Id., 22 C. J. § 803.

doctor concluded that his trouble was caused by infection from the gums, tonsils, and prostate gland. Massage treatment was administered, and he was given a solution of bromide and chloral and sodium iodide to relieve his pain. He visited the doctor seven times between that date and July 9th. An injection of atropin and novocaine was administered on July 2d. He obtained no permanent relief. He called again on July 9th, and reported that he had been suffering intense pain, and, as the doctor testified, threatened to commit suicide if not relieved. The defendant, who had an office near by, was called in. He injected alcohol into the sciatic nerve in plaintiff's back. The result was an almost total paralysis of his left leg. There has been a partial recovery. The plaintiff claims to have suffered much, due to this treatment, and to have been put to great expense in seeking to get relief from the effects thereof. He brings this action to recover the damages sustained by him due thereto. The trial resulted in a verdict and judgment in his favor for $3,250. The defendant seeks review by writ of error.

Plaintiff told in detail the treatment administered to him and the results thereof. Dr. John B. Rieger was then called, and, over defendant's objection, the following question was put to him: .

"Now, doctor, state whether or not in your opinion, the treatment of alcohol claimed to have been prescribed and used in this case evidenced the exercise of such skill and knowledge upon the part of Dr. Curtis as should have been possessed by physicians in this community in the light of scientific knowledge in July, 1923?"

To which the doctor answered, "No."

The defendant testified, in answer to a question:

"Well, the first thing I told him what we were going to do; then I told him he would feel an explosion—that is the way I expressed it, an explosion in his heel,

probably in his heel, feeling of an explosion in his heel when the alcohol strikes the nerve. Then I told him his leg would almost immediately become numb and flaccid; this paralysis would last from six months to a year, possibly longer; but he would have relief from these acute neuralgic pains that he was complaining of. I told him that it would gradually recover. He was very anxious to have it done. I watched him as the alcohol began to take effect after the injection. I was there at the office a few minutes after this."

There was testimony of other doctors then present that plaintiff was fully informed of the effects of the injection and consented to it. The defendant in no way admitted that the treatment administered was improper without such consent, although it may fairly be claimed that some of the other doctors called by him did so state.

The claim of plaintiff was thus stated in his declaration:

"*Fifth:* That the said defendant, well knowing his duty in the premises and wholly disregarding the same, did in a careless, unskilful and negligent manner so treat the plaintiff as to cause plaintiff's then condition to be greatly aggravated and likewise to cause one of the legs and one of the feet of said plaintiff, and the nerves, cords, ligaments thereof and extending therefrom, to become numb, stiff, disordered, painful, and not subject to control by plaintiff and rendered practically useless and thereby made it practically impossible for the said plaintiff to walk unassisted.

"*Sixth:* That because of the negligent, careless, and unskilful manner in which said defendant treated said plaintiff, the plaintiff became more sick, ill, and indisposed and was thereby caused and obliged to secure other and further treatment."

The court in his charge to the jury properly instructed them as to this claim and the duty of the defendant in respect thereto. He then said:

"The plaintiff has a second theory upon which he bases his case. He says that even though you should

find that the use of alcohol was good medical practice, still the defendant is liable if he did not tell the plaintiff in advance what the consequences would be."

After referring to the denial of liability on the part of the defendant, he said:

"So that the claim of Dr. Curtis might be stated in this way: First, that the injection of alcohol was a proper medical treatment for the disease of sciatic rheumatism; and, second, that Mr. Bockoff was informed in advance of the nature of the treatment and the possible consequences to him."

Later, and near the conclusion of the charge, he said:

"In connection with this last proposition which I have stated to you, namely, that the defendant's course of treatment must be presumed to be correct and proper until the contrary is shown, you have a right to consider the second theory of the plaintiff, namely, that even though the defendant's treatment was proper and careful, still he may be held liable upon the ground that he did not advise the plaintiff in advance of the nature of the treatment and its probable consequences. The plaintiff submits his case to you upon those two theories, and it is for you to determine whether or not he is entitled to recover in this case upon either one of those theories. The defendant, of course, denies that he is liable upon either theory. He says, first, that the service rendered was proper and in accordance with good medical practice, and, second, that he did fully advise the plaintiff of the nature of the treatment and the possible consequences of it."

Error in these instructions was relied on in defendant's motion for a new trial. In disposing of it, the court said:

"In my opinion this case was tried upon the double theory. The questions asked the witnesses fairly apprised counsel for the defendant that that theory was insisted upon in the case. If it was not formally mentioned in the declaration, or in the opening statement, it surely was brought into the case by the testimony of the witnesses, including the statements of

the defendant himself, and his witnesses.      Accordingly, the court will grant permission to amend the declaration along the lines indicated."

The instructions to the jury were given on November 1, 1926, more than three years after the treatment was administered.      Defendant's counsel urge that a new cause of action was injected into the declaration by the instructions without application to amend or consent thereto, that the error in doing so could not be cured by a subsequent amendment, and that in any event such new cause of action was barred by the statute of limitations.

That the "second theory" of the plaintiff, as stated by the court, did state a cause of action different in the nature of the liability and of the proofs needed to support it from that stated in the declaration, quoted above, cannot be doubted.      Under it the jury were plainly told that "even though the defendant's treatment was proper and careful" he might be held liable "if he did not advise the plaintiff in advance of the nature of the treatment and its probable consequences." Under this instruction the jury might have found for the plaintiff even though they were satisfied that he had not maintained the charge as stated in the declaration.

It is not within the discretion of a trial court to permit an amendment which states a cause of action barred by the statute of limitations.      *Gorman* v. *Newaygo Circuit Judge,* 27 Mich. 138; *Michigan Cent. R. Co.* v. *Kalamazoo Circuit Judge,* 35 Mich. 227; *Nugent* v. *Kent Circuit Judge,* 93 Mich. 462; *Wingert* v. *Wayne Circuit Judge,* 101 Mich. 395; *Flint, etc., R. Co.* v. *Wayne Circuit Judge,* 108 Mich. 80.

The trial court relied on the holding in *Draper* v. *Village of Springwells,* 235 Mich. 168.      It was there held that the omission of an averment of compliance with certain charter requirements might be cured by

amendment in this court to sustain the judgment. The amendment there permitted did not state a new cause of action distinct from that set up in the declaration as does that here in question.

For the error thus committed a new trial must be ordered. The only other question likely to arise on a retrial is the admissibility of the hypothetical question put to Dr. Rieger, heretofore quoted. It is urged that, "This was no hypothetical question, upon which, alone, opinion evidence is admissible;" that by it the doctor was permitted to express an opinion upon the specific fact which the jury must decide in reaching their verdict; that it violated the elementary rule stated in *Evans* v. *People,* 12 Mich. 27, 35, that "where the court or jury can make their own deductions, they shall not be made by those testifying." We are in accord with the rule thus stated. It may be observed that, following the above quotation, Mr. Justice CAMP-BELL also said:

"If a witness is competent to form an opinion which the jury could not, or which an ordinary witness could not, it would be absurd to reject his aid."

The purpose of a hypothetical question in cases such as this is to place the facts assumed to be true before a witness suitably equipped by education and experience. The assumption of facts is the basis upon which the witness reaches the mental result usually called his judgment. In *Spaulding* v. *Bliss,* 83 Mich. 311, 318, it was said:

"It was for the others to give the facts as to the treatment and acts of the defendants, and it was for physicians and surgeons to say whether or not the same were proper."

And in *Rogers* v. *Kee,* 171 Mich. 551, 557:

"Malpractice must be substantiated by the testimony of expert witnesses in order to prevail; it being proper for other witnesses to testify as to the treat-

ment and acts of defendant and the province of experts, physicians and surgeons, to say whether or not the same was proper and the probable results."

The question asked was but another way of inquiring whether the treatment was proper.    It was in line with the requirement stated in *Wood* v. *Vroman*, 215 Mich. 449, 465, and, in our opinion, was a proper one to submit to the doctor.

The judgment is reversed, with costs to appellant, and a new trial ordered.

FELLOWS, CLARK, and MCDONALD, JJ., concurred. WIEST, J., concurred in the result.

Chief Justice FLANNIGAN and the late Justices SNOW and BIRD took no part in this decision.