VAN DER BIE v. KOOLS.

1. Physicians and Surgeons—Malpractice—Evidence—Opinion of Expert Witness.

In action for malpractice in treating fractured arm, medical witness was properly permitted to testify as to what, in his opinion, would be result of treatment of fractured arm such as was set forth in hypothetical question; said answer not being objectionable on ground that witness was permitted to invade province of jury.

2. Same.

Where, in action for malpractice in treating fractured arm, two causes are alleged for its present atrophied condition, it was proper for medical witness to testify that certain conditions would, might, or could produce certain results.

3. Same—Cross-Examination—Evidence.

Where, on cross-examination, medical witness volunteered statement as to treatment prescribed for certain kind of fracture by certain author, it was proper for counsel to attempt to show, by further questions, just what said author prescribed, over defendant's objection that it gave jury impression that said author did not agree with witness.

4. Same—Damages—Excessive Verdict.

Where, as result of malpractice in treatment of fracture, muscles of three-year old boy's arm are permanently atrophied, resulting in what is known as claw hand without any sense of feeling except partially in thumb, and he has suffered intense pain for many weeks, verdict of $8,750 is not excessive.

5. Same—Great Weight of Evidence—Number of Witnesses Not Controlling.

That, in action for malpractice in treatment of fracture, plaintiff called only one medical expert, while defendant produced many, would not render verdict for plaintiff against great weight of evidence, especially where controlling fact in case did not depend upon professional testimony, and no expert testified that treatment as shown by plaintiff's testimony was proper.

Appeal from Ottawa; Vanderwerp (John), J. Submitted April 14, 1933. (Docket No. 133, Calendar No. 37,191.) Decided October 2, 1933.

Case by Anthony J. Van Der Bie, by next friend, against William C. Kools for alleged malpractice in reducing and treating a fractured arm. Verdict and judgment for plaintiff. Defendant appeals. Affirmed.

*Leo W. Hoffman* and *Clare E. Hoffman* (*Carl E. Hoffman,* of counsel), for plaintiff.

*Douglas, Barbour, Desenberg & Purdy,* for defendant.

McDONALD, C. J. The plaintiff received a verdict and judgment for $8,750 in the circuit court of Ottawa county in an action against the defendant, who is a physician, for alleged malpractice in reducing and treating a fractured arm.

On October 24, 1931, the plaintiff, Anthony Van Der Bie, then a child three years of age, fell, and fractured his arm just above the elbow joint. He was taken to the hospital at Holland, where the defendant, who had been called to attend him, reduced the fracture, after which he wound the forearm with adhesive tape and drew it back on the upper arm, to which it was taped for the purpose of holding it in position. A padding of gauze about half an inch thick was placed in the elbow joint to protect the flesh. A piece of gauze was then wound lightly about the wrist and carried up around the neck to sustain the arm across the chest. The forearm was left in this flexed position for about two weeks. After the fracture was reduced the boy was taken home. It

is his claim that the arm became greatly swollen and discolored; that it caused him intense pain; that sores developed under the gauze on the wrist and forearm, from which pus began to ooze; that the defendant paid no attention to the sores, and did nothing to relieve his suffering; that on November 9th the arm was released and the bandages removed; that at this time, on the advice of Dr. Hodgen, a bone specialist of Grand Rapids, the defendant's method of sustaining the arm in a rigid position across the chest was abandoned, and an aluminum splint was applied; that the defendant continued to attend the case until January 13th, when the boy was taken to the university hospital at Ann Arbor, where he was treated for several weeks by a bone and joint specialist; that a permanent paralysis of the fingers and hand, known as Volkman's contracture, developed.

The plaintiff does not claim that the fracture was not properly reduced. The claim is that the malpractice consists in flexing the forearm so acutely as to impair the circulation, in tying the bandage around the wrist too tightly and leaving it for such a length of time that sores developed which ate into the flesh and injured the ulnar nerve, and in neglecting to discover and treat the sores when the pus stains first appeared on the bandages.

The defendant contends that he properly reduced the fracture; that in flexing the forearm in order to hold the bones in place he followed a method of practice approved by physicians and surgeons; that he did not neglect the sores, but properly dressed them with septic dressings; that the present condition of the boy's arm is due to an injury to the brachial artery at the elbow joint; that the injury to the artery was caused by the fracture resulting in

an impairment of the circulation and the consequent development of Volkman's contracture, a condition which could not have been prevented by the most skillful treatment.

These issues were submitted to the jury in a charge of which there is no complaint. Judgment was entered on a verdict for the plaintiff. The defendant has appealed, and alleges as cause for appeal that the court erred in permitting Dr. Kopprasch, a witness for the plaintiff, to answer the following question on direct examination by Mr. Hoffman:

"*Q.* · Assuming the treatment of this boy's arm after it was broken to have been set forth in that hypothetical question, what in your opinion would that treatment result in, what would be the result of that kind of treatment?"

In allowing an answer to this question it is said by the defendant that the doctor was permitted to invade the province of the jury in violation ·of the rule of evidence enunciated by this court in *DeHaan* v. *Winter,* 258 Mich. 293, and in *DeGroot* v. *Winter,* 261 Mich. 660. We think the question was proper. In the instant case two causes for the boy's present condition are alleged. The defendant claims that it was due to an injury to an artery by the fracture. Plaintiff claims it is due to the acute flexion of the forearm for too long a period of time. The doctor was not asked and did not undertake to say which of these claims was correct. He merely testified that acute flexing of the arm under the conditions as claimed by the plaintiff would produce certain results. If asked, he probably would have testified that breaking of the artery at the point of fracture would produce the same results. He was not asked

what did produce the result. That was for the jury to determine. It was proper for him to testify that certain conditions would, might, or could produce certain results. The court did not err in permitting the question to be answered.

The second alleged error relates to the cross-examination of defendant's medical experts. The examination of Dr. Walker illustrates defendant's contention. He was asked by plaintiff's counsel:

"*Q.* Have you any particular authority in mind about that proposition, about how a fracture of this kind should be treated?

"*A.* Yes, Roberts.

"*Q.* And what others?

"*A.* Kelly.

"*Q.* What about Scudder?

"*A.* Well, Scudder says practically this, only he allows you to use splints. Just the treatment I have named. I have read Scudder's latest work. * * *

"*Q.* I am asking you if Scudder does not say when there is swelling and discoloration there, to take the arm down?

"*A.* That is a different thing.

"*Q.* No; doesn't he say that?"

Objection to the last question was sustained by the court. Though the witness was not permitted to answer the question, defendant insists that there was error in asking it because of what it suggested, that it gave the jury the impression that Scudder did not agree with Dr. Walker. The statement of the witness as to the treatment prescribed by Scudder was not brought out by any question of counsel. It was volunteered by the witness. Having injected Scudder's method of treatment, the way was opened for the cross-examination which counsel was at-

tempting to pursue .when stopped by the ruling of the court. There is no merit in this assignment of error.

Other alleged errors in the admission of evidence as to the proper treatment of fractures like that in question have been examined and deemed to be without merit. Similar questions are discussed and disposed of adversely to the defendant's contention in *Mayo* v. *Wright,* 63 Mich. 32, and *Spaulding* v. *Bliss,* 83 Mich. 311.

It is alleged as cause for reversal that the verdict is excessive and against the great weight of the evidence.

All the medical experts agree that the condition of the plaintiff's arm and hand is permanent. The muscles of the forearm are atrophied. He has what is known as a claw hand without any sense of feeling except partially in the thumb. It will never be of any use to him. In addition to this humiliating deformity, which he must carry through life, he endured intense pain and suffering for many weeks after the injury. In view of these facts, we think the verdict was not unreasonable as to the amount of damages awarded. Nor do we think it was against the great weight of the evidence. It is true that the plaintiff called but one medical expert, while the defendant produced several. But the proof of the controlling fact in the case did not depend upon professional testimony. They all agreed that the condition of the boy's arm was caused by impairment of the circulation. They were in agreement as to what would cause the impairment. It was either the defendant's treatment following his reduction of the fracture or injury to the brachial artery by the fracture. The claim of injury to the artery is

supported by the testimony of the defendant, who testified that after he reduced the fracture he could not feel the radial pulse. On his testimony medical experts based their opinion that the artery was injured at the time and by the fracture. On the part of the plaintiff, the boy's father, who was present when the fracture was reduced, testified that defendant told him he could feel the radial pulse. If there was a radial pulse the artery was not injured and the impairment of the circulation must have been caused by the defendant's treatment. So on the vitally important question in the case the only testimony was that of the defendant and the boy's father. In respect to the testimony of the medical experts, none of them testified that the treatment as shown by the plaintiff's testimony was proper. In fact, laymen would know that it was not. The verdict was not against the great weight of the evidence. The record shows no reversible error.

The judgment is affirmed, with costs to the plaintiff.

POTTER, SHARPE, NORTH, FEAD, and BUTZEL, JJ., concurred with McDONALD, C. J. WIEST, J., concurred in the result. CLARK, J., took no part in this decision.