## CHAMBERS v. TOBIN.
### No. 61-50.

United States District Court
District of Columbia.

Jan. 21, 1954.

Arthur J. Hilland, Washington, D. C., for plaintiff.

Harry J. Welch, Washington, D. C., for defendant.

YOUNGDAHL, District Judge.

In this malpractice action, the jury returned a verdict for the plaintiff in the sum of $30,000. Plaintiff asserted negligence on the part of defendant in setting and treating a broken wrist of plaintiff, resulting in deformity and disability to the forearm and hand.

Defendant has moved for judgment notwithstanding the verdict or for an order setting aside and vacating the verdict and granting a new trial, and in the event such relief is denied, for a remittitur.

At a prior trial before another judge of this court, defendant's motion for a directed verdict was granted at the close of plaintiff's case. The Court of Appeals

reversed, holding that plaintiff's evidence warranted submitting the case to the jury. Chambers v. Tobin, 92 U.S.App. D.C. 274, 204 F.2d 732.

In reviewing plaintiff's case the Court of Appeals noted that, "The evidence in part showed that the fracture was of a common type, known as a 'Colles' fracture'; that the usual period for a union was from four to eight weeks; that casts applied by defendant during a period of postoperative treatment were too tight; and that a state of severe contraction developed. Plaintiff offered to prove that the usual prognosis is good in the case of a Colles' fracture, with only slight widening of the wrist, and that the functioning of the hand, wrist and arm is usually unaffected." The Court said that the offered evidence was improperly rejected.

In concluding that the case should have gone to the jury, the Court stated:

"A careful consideration of all the evidence, construed most favorably to plaintiff, with the benefit of every legitimate inference, leads us to conclude that it brings the case fairly within the scope of our opinion in Goodwin v. Hertzberg, 1952, 91 U.S. App.D.C. 385, 201 F.2d 204".

In Goodwin v. Hertzberg, supra [91 U.S.App.D.C. 385, 201 F.2d 205], it was stated:

" 'The rule applicable in the District of Columbia on a motion for a directed verdict, in an action founded upon negligence, is that the evidence must be construed most favorably to the plaintiff; to this end he is entitled to the full effect of every legitimate inference therefrom; if upon the evidence, so considered, reasonable men might differ, the case should go to the jury * * *.'

* * * It is immaterial that no expert testified that appellee acted negligently. 'Malpractice is hard to prove. The physician has all of the advantage of position. * * * What therefore might be slight evidence when there is no such advantage, as in ordinary negligence cases, takes on greater weight in malpractice suits. * * *' "

The evidence adduced at this trial is even stronger for plaintiff than at the first trial because of the additional evidence received as to the usual prognosis in the case of a Colles' fracture which the Court of Appeals held was erroneously excluded in the first trial. It seems to this Court, therefore, that the Court of Appeals' determination that a jury question was presented is decisive and defendant is now in no position to assert that a case was not made for the jury. Of course the evidence as now submitted must be considered in deciding whether plaintiff made out a case, rather than the evidence at the former trial.

Construed most favorably to plaintiff with the benefit of every legitimate inference, plaintiff's evidence may be summarized thus:

On February 2, 1947, plaintiff slipped on a scatter-rug in her home, fell and broke her left wrist, sustaining a simple comminuted Colles' fracture. After receiving first aid treatment at Georgetown University Hospital, she returned the next day and employed defendant to treat the wrist. She was given a general anesthetic; the fracture was reduced and her arm put in a cast. At that time she was suffering some pain; there was some discoloration, but no swelling.

On numerous occasions after this cast was applied, plaintiff complained to defendant about the cast being too tight, but was told it couldn't be touched. On February 5th or 6th the cast was cut and remained in that condition until February 12th when it was removed and a new cast applied. No anesthetic was given the plaintiff at that time. Before applying the second cast, defendant took one of plaintiff's hands with one of his hands and her elbow with the other hand and pushed the bones together. Plaintiff asked why he hadn't given her an anesthetic and he replied, "I should have and may still have to." After the second cast was applied, Dr. Rush, defendant's assistant, looked through the fluoroscope

at the point of fracture and said to defendant, "Bill, there is something wrong here." Whereupon defendant replied, "Finish up, I've got to go back to my classes."

The second cast was also very tight and plaintiff suffered considerable pain. There was swelling and discoloration. The fingers were so swollen that there was no space between them. Plaintiff could not supinate or pronate the hand. Between February 12th and February 22nd, plaintiff complained to defendant many times about the tightness of the cast and asked defendant to cut it, but he said it could not be done. Plaintiff also complained to Dr. Rush about the tightness of the cast, but nothing was done. The pain was intense at all times and defendant was informed by plaintiff of the intensity of the pain and swelling, but did nothing about it. Subsequently defendant told plaintiff he was worried about the arm and said he was afraid she was going to lose the arm because of a gangrenous condition.

Defendant sent plaintiff to Dr. Fulcher, a nerve specialist, and upon examing the arm he said, "When I see something like this, it makes me want to go back to orthopedics." Dr. Fulcher said that plaintiff had a Volkmann's contracture; that it was an orthopedic mistake, an over-corrected arm. Dr. Fulcher called defendant's attention to the tightness of the cast and stated that he (Dr. Fulcher) would not touch the arm until the cast was cut; and when plaintiff returned to defendant to have the cast cut, defendant stated that he thoroughly disagreed with Dr. Fulcher, but that he would cut the cast anyway.

Dr. Fulcher advised plaintiff that if she was not better in forty-eight hours, she should go to the hospital. She reported this to defendant, but he did nothing about it, though plaintiff was not any better. The arm continued to be very swollen and when plaintiff called defendant's attention to it, he replied that it was just circulatory.

Plaintiff's injury was diagnosed by the assistant at Emergency Hospital as a Volkmann's contracture, which is the result of diminished blood supply to a certain part of the arm. There is evidence that a too tight cast could be a competent producing cause of this lack of blood supply; that an ordinary Colles' fracture should take approximately six weeks to heal, and that the usual prognosis is good. Ordinarily there is functional disturbance for another six weeks or two months, and no resulting deformity of the hands and fingers between the elbow and wrist.

As appears from this analysis of plaintiff's testimony, she presented an even stronger case here than that which served as the basis for the Court of Appeals' decision in the former trial, for here there was added to the record of plaintiff's case, the testimony that the usual prognosis of an ordinary Colles' fracture is good. Yet defendant still persists in his contention that it was necessary for plaintiff to produce medical testimony that the cast was too tight and that defendant was negligent in failing to cut the cast. Defendant also insists that plaintiff failed to establish any evidence that defendant was negligent in not cutting the cast and that such negligence was the proximate cause of the condition complained of by plaintiff.

To agree with these contentions of defendant, it seems to me, is to completely disregard the holding of the Court of Appeals in the prior trial. It is significant that defendant is relying upon the same cases in support of this position as he relied upon in asserting virtually the same contentions before the Court of Appeals. All the cases cited in defendant's memorandum supporting his contentions here were included in defendant's appellee brief before the Court of Appeals. A careful study of the cases and arguments urged by defendant in his brief here and in his brief on the appeal indicates that he is reasserting the same arguments which were decided against him by the Court of Appeals. See Defendant's Table of Cases and pp. 7–16 in his appellee brief. It is crystal clear to this Court that the Court

of Appeals' decision is determinative on these points.

Defendant attempts to distinguish this trial from the first trial in asserting that defendant has now taken the stand to fully explain his care and treatment of plaintiff and that defendant is supported by a number of expert witnesses that he used proper care.

Defendant vigorously asserts that his testimony fully explains away the contention of plaintiff and is so overwhelmingly on his side as to have required a directed verdict. True, defendant sharply contradicted plaintiff's version on many substantial items of testimony. But to assert that because defendant, in the second trial, contradicted plaintiff's testimony, a directed verdict was again required, is to say that the Court should encroach upon the jury's prerogative in deciding controverted issues of fact. It is true also, that at the second trial several doctors were produced by defendant as expert witnesses who testified that defendant used the required standard of care of an orthopedic surgeon in this community. It must be remembered, however, that in the hypothetical questions propounded to these experts the facts were assumed as defendant claimed them to be. The Court charged the jury that they should give consideration to these opinions but that the probative force to be given to them was for the jury to determine. The jury was also instructed that if the evidence did not sustain the assumed facts in the hypothetical questions, then they were to give no credence to them.

■ The presentation of defendant's case created a sharp disagreement in the testimony on factual questions. Implicit in the jury's verdict is a determination for plaintiff on these disputed questions of fact. Implicit in the jury's verdict, also, is a finding that the facts assumed in the hypothetical questions asked the experts in behalf of defendant did not correctly state the facts as they actually are.

The jury simply chose to believe plaintiff. This was the jury's province.

■■ Defendant further argues that a new trial should be ordered because the jury was prejudiced by improper remarks made by plaintiff's counsel. Defendant complains of a comment by plaintiff's counsel in his closing argument that plaintiff's doctors improperly discussed the case before the trial with defendant's counsel without permission of plaintiff. Of course plaintiff waived the physician-patient privilege as to her doctors' testifying against her by her own testimony as to conversations with these doctors. But the point that plaintiff's attorney was apparently attempting to make was that the probative effect of these doctors' testimony should be considered in the light of these previous conversations with defendant's counsel. I feel that this was a legitimate argument to be made in connection with the credibility to be attached their testimony. Further, defendant's counsel made no objection when the comment was made nor did he request an instruction advising the jury to disregard the comment. But the Court, without request from defendant's counsel, requested plaintiff's counsel at the bench to refrain from discussing the issue of relationship between physician and patient during his rebuttal, with which request he complied. Even assuming that the remark objected to was beyond the pale of proper argument, the Court cannot see how defendant was prejudiced by the remark. This case was carefully, ably and vigorously tried by competent counsel on both sides. The Court was impressed by the fact that counsel for both parties confined themselves to presentation of the facts in behalf of their clients—within the proprieties of the rules of evidence.

Lastly, defendant urges that in any event, the verdict is excessive and there should be a remittitur.

Plaintiff suffered severe pain for an extended period of time and will continue to suffer pain in the future. She now has a permanently deformed wrist and arm; she is unable to make a fist. She was in the hospital for the period of August 9, 1947 to September 1, 1947, for

a series of manipulations, given under anesthetic. She has been in the hospital several other times for an operation and treatment attempting to improve movement in her forearm and hand. She has had to wear a series of braces and still wears one when at home. She will have to undergo another operation which should help to some extent but will not completely remedy her condition. The special damages are approximately $4,-000.

Plaintiff is a woman now fifty-five years of age who before the accident enjoyed an active and useful life. She drove an automobile, played the piano, played golf and did sewing. Her disability will prevent her from participating in any of these activities in the future.

■■ The verdict, of course, is substantial, but in light of all of the evidence considered most favorably to plaintiff, as the Court is required to do, and considering the present value of the dollar, the Court feels it would be invading the jury's province to reduce the verdict.

For the reasons herein expressed, defendant's motion in its entirety will be denied.