107 So.2d 253 (1958)
Frank B. ATKINS and Rebecca Atkins, an Infant, by Frank B. Atkins, her father and next friend, Appellants,
v.
Karl T. HUMES, Appellee.
No. 394.
District Court of Appeal of Florida. Second District.
September 3, 1958.
Rehearing Denied September 29, 1958.
*254 Dayton, Dayton & Luckie and Norma Jean Wagner, Dade City, for appellants.
P.B. Howell, Bushnell, and Savage & Mills, Ocala, for appellee.
KANNER, Chief Judge.
The trial judge in a malpractice action granted summary judgment for appellee, a medical doctor engaged in the practice of his profession in Bushnell. The basis for the action was a permanent injury to the infant-appellant's arm and hand as the result of alleged negligent treatment by appellee. The judgment thus entered is the source of this appeal.
A uniformly recognized definition of "`Malpractice,' as the term is used with reference to physicians and surgeons, is bad or unskillful practice on the part of a physician or surgeon resulting in injury to the patient". Negligence when applied to malpractice by a physician or surgeon "has been said to consist in his doing something which he should not have done or omitting to do something which he should have done, or his failure to exercise the required degree of care, skill, and diligence". 70 C.J.S. Physicians and Surgeons § 40, pp. 945, 946.
The record consists of the pleadings, affidavits, and several depositions. A condensation of the material facts substantially reveals that: On December 17, 1955, the infant suffered a supercondylar fracture of the left humerus in the elbow. She was brought to appellee's office for treatment *255 within an hour of the injury. Appellee reduced the fracture by closed reduction. Fluoroscopy and x-rays were used before and after reduction, and alignment of the bone was very good. Two layers of sheet wadding were applied to the arm, and felt protective pads were placed over the olecranon process at the elbow and over the styloid processes of the radius and ulna at the wrist. The arm was maintained at a 45 degree angle but was not hyperflexed. A cast was formed of four layers of plaster of paris to immobilize the injured bones, care being taken not to apply the plaster too tightly. Tissue trauma from reduction was minimal.
On December 28, before the removal of the cast, appellee left on vacation and the child was taken to the out-patient clinic of the Orlando Air Force Base Hospital for medical treatment not connected with the arm injury. She was examined by Dr. Rosenbaum a pediatrician, who suggested that she be examined by Dr. W.H. Miller, chief of surgery at the Air Force hospital, as to the left arm.
On January 19, 1956, appellee, upon removing the cast, found a sore of about the size of a quarter between the child's elbow and wrist. There resulted from the sore what is known as a Volkmann's contracture. Basically, this is a contracture of the muscles which flex the fingers and hand and which results in what is commonly known as a "claw hand". On discovery of the sore and the resulting impairment of mobility of the child's hand, appellee prescribed physiotherapy; and this being unsuccessful, on February 1, 1956, he recommended that the child be taken to a specialist for treatment.
The appellee in his deposition indicates that elbow fractures are known to cause Volkmann's contracture more than any other arm fractures and that he was aware of the danger of this development; that such contracture can come from several different causes leading generally to a decreased blood supply to a particular area; that among the possible causes are arterial spasm, arterial constriction by the broken bone, hematoma, thrombus, embolus, constricting bandages, and veinous obstruction. Warning signs of Volkmann's contracture such as excessive pain, swelling, discoloration, and inability to flex the fingers were not apparent to appellee before or after application of the cast; and it was not until January 19, 1956, on removal of the cast, that functional impairment of the child's fingers caused him to suspect the occurrence of this malady.
From February 2 to February 29 the patient was under treatment by Dr. W.H. Miller, who determined by x-ray that the fracture was in good position and alignment. Physiotherapy treatment was given and he did not suspect a contracture until February 5, 1956. Having examined the child while her arm was in a cast, he testified that the cast was in good condition, that it held the arm in good position, that the fingers of the hand were pink and warm, that he noticed no difficulty by the child to flex her fingers, that she did not complain, and that the fracture healed so as to give a satisfactory joint. When the child was again brought to him on February 2, 1956, after removal of the cast she could move her fingers but could not extend them completely. He could not give an opinion of the specific cause of the sore on the arm. He testified further that there are several possible causes of Volkmann's contracture, that immediate reduction is the best way to prevent it, that a cast of the type applied by appellee was a very good method of treatment of the type fracture involved, that Volkmann's contracture can occur without a cast, that a tight bandage or cast rarely causes contracture, and that his examination of the child during and after the time when the cast was on her arm disclosed in his opinion no negligent nor improper treatment by appellee.
On February 29, 1956, the patient was referred to Dr. Royston Miller, under whose *256 care physiotherapy and an operation to remove scar tissue where the sore healed have largely reduced the amount of injury, giving the child a useful hand. He testified that the infant suffered a Volkmann's contracture as a result of the sore which could have been caused by swelling following fracture of the elbow, by a marked amount of internal bleeding into a muscle group, by the cast having been applied too tightly, as well as by other possible causes; that fracture blisters occur quite frequently; and that fractures of a type which the child sustained are customarily treated by application of a plaster of paris cast. Basing his opinion on the history of the child, he felt that the contracture was not obvious until removal of the cast; and, insofar as he could determine, in his opinion, treatment of the child had been proper. It was his impression that this contracture was one that gradually developed and did not come on immediately after the reduction of the fracture.
There are affidavits by lay witnesses and deposition testimony of the parents to the effect that during the time the cast was on the child's arm the fingers of her hand were cold, swollen, discolored, that she suffered pain in her arm, and that there were the indentations or prints of three fingers on the cast above the point where the sore formed on the child's arm.
The focal and predominant question posed by appellants is whether a genuine issue of material fact was raised by the pleadings, depositions, and affidavits so as to preclude summary judgment. Appellants in their brief state that they do not question the method of treatment the appellee chose. Their position is (1) that the appellee negligently applied the cast too tightly to the infant's arm, and (2) that appellee was negligent in failing to heed the classic warnings of Volkmann's contracture while the cast was on the child's arm.
It is incumbent upon a physician or surgeon to utilize reasonable care, skill, and diligence in diagnosis and treatment of his patient; and failure to possess the requisite skill or to exercise these requisite standards of skill, care and diligence may render him liable for resulting injuries. 41 Am.Jur., Physicians and Surgeons, section 79, p. 198 and section 82, pp. 200-202; 70 C.J.S. Physicians and Surgeons § 48, pp. 955-958, and Saunders v. Lischkoff, 1939, 137 Fla. 826, 188 So. 815. A physician or surgeon is not, however, a guarantor of the correctness of his diagnosis or of a cure and will not be held liable where he has employed reasonable skill and care in determining the diagnosis and has administered proper treatment without negligence, even though the desired results do not ensue. Hill v. Boughton, 1941, 146 Fla. 505, 1 So.2d 610, 134 A.L.R. 678.
The overpowering authority is that generally expert testimony is necessary to sustain a malpractice action against a physician or surgeon. Annotation 141 A.L.R. 6; and Foster v. Thornton, 1936, 125 Fla. 699, 170 So. 459. An exception to this general rule is applied in cases where want of skill or lack of care on the part of the physician or surgeon is so obvious as to be within the understanding of laymen and to necessitate only common knowledge and experience to judge it. In such cases, expert evidence is not required. Annotation 141 A.L.R. 12. This exception is stated very clearly and concisely in 41 Am.Jur., Physicians and Surgeons, section 129, pp. 240-241:
"Opinion evidence, to be admissible in a malpractice case on the issue of whether or not a physician or surgeon exercised the requisite skill and care in his treatment of his patient, must be founded on expert knowledge; that is on knowledge better than that possessed by members of the jury. And it is the accepted rule that expert testimony is not necessary for the proof of negligence in nontechnical matters or those of which an ordinary person may be expected to have knowledge, or where the lack of skill or want of *257 care is so obvious as to render expert testimony unnecessary, but that expert testimony is admissible in malpractice cases, in which the plaintiff must prove by members of the defendant's profession the standard of care or skill ordinarily used in the practice of that profession at a particular place, since they alone know such standards."
To the same effect see 70 C.J.S. Physicians and Surgeons § 62(a) (2), pp. 1006-1010. Florida has aligned herself with other jurisdictions in the recognition of this principle. See Montgomery v. Stary, Fla. 1955, 84 So.2d 34; and Crovella v. Cochrane, Fla.App. 1958, 102 So.2d 307.
The affidavits by lay witnesses and testimony of the parents have not been overlooked. Considering them with all the other evidence, it does not appear that there were indications of a situation in which a lack of care or want of skill was so obvious by reason of common knowledge and experience as to be apparent to laymen; nor were there indications of nontechnical matters of which an ordinary person could be expected to have knowledge. Experienced physicians examined the child and all were in accord that they could discern no signs of nor did they discover the developing of the contracture until removal of the cast. In 41 Am.Jur., Physicians and Surgeons, section 131, p. 244, it is said:
"The opinion of lay witnesses as to the appearance of an injured member of the plaintiff's body, based upon a casual examination, raises no conflict with the opinions of expert medical witnesses who made a careful examination of the actual conditions to determine the proper treatment to be administered."
Appellants rely on several cases involving Volkmann's contracture as authority for their contentions:
In Bartholomew v. Butts, 1942, 232 Iowa 776, 5 N.W.2d 7, not only does it appear that the portents of impending development of Volkmann's contracture were readily apparent to laymen, but in addition the plaintiff's case was buttressed by expert testimony.
In Van Der Bie v. Kools, 1933, 264 Mich. 468, 250 N.W. 268, there developed on the arm of the child purulent sores visible to laymen notwithstanding the bandages, and again there was expert testimony to support the case.
In Chambers v. Tobin, D.C.D.C. 1954, 118 F. Supp. 555, the injury was a Colles fracture of the wrist and expert testimony was that the usual prognosis is good; there was evidence of intense pain as well as testimony that the plaintiff, a grown woman, complained that the cast was too tight; and there was also testimony indicating that other physicians thought the cast too tight and that there was "something wrong".
In Sim v. Weeks, 1935, 7 Cal. App.2d 28, 45 P.2d 350, there was expert testimony in behalf of both parties.
The cases cited and relied on by appellants do not appear to be controlling in the present circumstances.
Where recognized treatment is properly applied, no liability arises for a failure to produce good results. A failure to effect a cure raises no presumption of negligence. Hill v. Boughton, 1941, 146 Fla. 505, 1 So.2d 610, 134 A.L.R. 678; Hine v. Fox, Fla. 1956, 89 So.2d 13; and Derr v. Bonney, 1951, 38 Wash.2d 678, 231 P.2d 637, 54 A.L.R.2d 193.
In Grubbs v. McShane, 1940, 144 Fla. 585, 198 So. 208, a patient became afflicted with phlebitis in his left leg. The physician applied a heat treatment by wrapping the leg in a blanket to retain the heat of light bulbs placed some six or seven inches away. It was held that no presumption of negligence *258 arose from the fact that a blister resulted while the heat treatment was being applied, nor from the further fact that ulcers later appeared on the leg.
The case of Montgomery v. Stary, Fla. 1955, 84 So.2d 34, 40, factually is clearly distinguishable from the instant case. In that case the fingers and thumb of a premature infant were needlessly burned off by the application of steaming hot towels. The Supreme Court determined "The jury could have found, as a matter of their own common knowledge and experience, and independent of expert testimony as to acceptable medical practice, that the fingers and thumb of a premature infant were needlessly burned off, and that this could not be considered acceptable medical practice in any community". Moreover, in that case there was medical testimony sufficient to create an issue of proximate cause.
Nothing here is intended even to imply that lay testimony may not, in proper circumstances, be relied on to show negligence of a physician or surgeon in a malpractice case. Indeed, as has already been indicated here, the Florida Supreme Court has recognized such principle.
Another important facet of the present case must be examined  that of proximate cause. A physician or surgeon incurs no liability toward his patients unless his negligence, if any, proximately results in injury. See Saunders v. Lischkoff, 1939, 137 Fla. 826, 188 So. 815; Bowles v. Bourdon, 1949, 148 Tex. 1, 219 S.W.2d 779, 13 A.L.R.2d 1, and the annotation at 13 A.L.R. 2d 11; and Lippold v. Kidd, 1928, 126 Or. 160, 269 P. 210, 59 A.L.R. 875. In this connection also see 41 Am.Jur., Physicians and Surgeons, section 129, pocket supplement, p. 42, and section 131, pocket supplement, p. 44.
There was no competent basis connecting the formation of the sore and the contracture with the allegedly improper treatment administered. No expert testified that the sore and contracture resulted from improper treatment, rather, the opposite clearly appears. There was no showing whatever that the three fingerprints on the cast caused a protrusion of the inside wall of the cast and in fact no showing that they were more than superficial indentations; nor was there any showing that these fingerprints were caused by appellee or how they came about.
The trial judge found that "The testimony of Dr. Royston Miller, like that of Dr. W.H. Miller, does not connect with the the trouble from which this child is suffering, with any malpractice erronious (sic) or negligent treatment of any kind whatsoever, and there is nothing in the testimony, nor is there anything in the affidavits presented in behalf of the plaintiffs at this hearing, that would sustain or justify submitting this cause to a jury for its determination. Both doctors in their testimony, give several conditions which may cause the trouble complained of and there is not one wit (sic) of testimony to indicate that the defendant, Dr. Humes, was negligent or careless in anything that he did, or to indicate that his treatment of the fractured bone in this case was not on a par with the best treatment known to and used by the medical profession." We are in accord with the trial judge's findings.
In a malpractice action judgment cannot be entered for the injured patient predicated on speculation or conjecture. It follows that the appellants' case falls in this category. This is not enough.
A motion for summary judgment is to determine if there is sufficient evidence to justify a trial upon the issues made by the pleadings. If a party moved against is without evidence to support facts which he must establish in order to succeed, or is without evidence to rebut facts established by his opponent which preclude a judgment in his favor, then summary *259 judgment is proper. Connolly v. Sebeco, Fla. 1956, 89 So.2d 482. Also, in a summary judgment proceeding where there is no material issue of fact which requires the determination of a jury, the award of summary judgment is proper. Herring v. Eiland, Fla. 1955, 81 So.2d 645. In the present case appellants have not shown that they could produce evidence to support the allegations of their complaint. They have not shown that they could establish facts necessary to their cause, nor to rebut facts established by appellee which would preclude their recovery.
Appellants contend that it was reversible error for the trial court to sustain appellee's objections to certain parts of Dr. Rosenbaum's deposition. Appellee asserts that the trial court did not refuse to consider the deposition, but that after the court sustained certain objections to the clinical record, appellants thereafter failed to offer the deposition. The record does not disclose what transpired since the proceedings were not transcribed, and there is no basis for determining whether error was committed. Nevertheless, an examination of the clinical record and the deposition of Dr. Rosenbaum discloses nothing which would otherwise affect the negligence question involved. Nowhere does Dr. Rosenbaum indicate that there had been improper treatment of the fracture.
Appellants also raise the question whether the court erred in taxing as costs against them the sum paid by appellee for copies of certain depositions. Appellee has conceded that it was error to tax these charges as costs and as to this, the judgment must be reversed. See Florida Greyhound Lines v. Jones, Fla. 1952, 60 So.2d 396.
The judgment of the trial court is accordingly affirmed in all respects except as to the item of costs mentioned, and in that regard is reversed.
ALLEN and SHANNON, JJ., concur.