[No. 9,203. Department Two. — September 30, 1884.]

IDA E. ANDREWS, RESPONDENT, *v.* O. R. RUNYON, AND P. J. VAN LOBEN SELS, APPELLANTS.

HUSBAND AND WIFE — SUIT BY MARRIED WOMAN — DESERTION — PARTIES. — Where a wife deserts her husband, but before the expiration of the statutory period required to make the desertion a cause of divorce offers, by letter, and in good faith, to return and resume the performance of her marital duties, and he informs her that he will not receive her, such refusal amounts to desertion on his part, and she may sue alone to recover damages for personal injuries.

CONTRIBUTORY NEGLIGENCE — INSTRUCTIONS — REMARKS OF THE JUDGE. — The action was brought to recover damages for personal injuries caused by the alleged negligence of the defendants, and contributory negligence on the part of the plaintiff was set up as a defense. After submitting to the jury the question of contributory negligence, the judge remarked to the jury that he did not see how the acts alleged to constitute contributory negligence were unreasonable, or something which an ordinary man would not do. *Held,* error.

ID. — ILLEGAL ACT OF EMPLOYEE — LIABILITY OF EMPLOYER. — One who employs
another to repair a levee in the vicinity of a highway is not responsible for the
consequences of an illegal act of the latter in removing earth from the highway,
to be used in making the repairs, unless such removal entered into and formed
a part of the contract of employment.

INSTRUCTIONS — REFUSAL TO GIVE ON ACCOUNT OF LENGTH. — It is error for the
court to refuse instructions on account of their number and length.

APPEAL from a judgment of the Superior Court of Sacramento County, and from an order refusing a new trial.

The defendants solicited and received subscriptions from various interested parties to repair a break in a levee on the Sacramento River. The moneys obtained were placed in the hands of defendant Runyon, and he made a verbal contract with Ah Long, a Chinaman, to rebuild the levee. The Chinese contractor, in rebuilding the levee, dug up a portion of the public road, leaving an excavation from three to five feet in depth, and about ten feet in width, extending across the traveled way. About four o'clock on the morning of October 17, 1882, the plaintiff and one Dye were driving with a team of horses and a buggy along the road, and drove into the excavation, by which the plaintiff was seriously injured. The remaining facts are stated in the opinion of the court.

*McKune & George, A. Campbell, Sr., P. J. Van Loben Sels, L. S. Taylor,* and *Hart & White,* for Appellants.

*Grove L. Johnson,* and *Jones & Martin,* for Respondent.

THORNTON, J. — This action was instituted to recover damages for personal injuries alleged to have been occasioned by the negligence of defendants, and comes before this court on appeal of the parties last named from the judgment and order denying a new trial.

Many points are argued in the briefs of counsel, which we are called on to consider and determine.

As to the objections to the complaint, we are of opinion that they are not well taken.

It is urged that the plaintiff was a married woman who had deserted her husband, and therefore was not competent to sue alone. The court in its direction to the jury ruled against this contention, and error is assigned on this ruling.

The statute (Code Civ. Proc. § 370) requires that when a married woman is a party, her husband must be joined with her, except under certain conditions therein specified. The exception under which the plaintiff claims that she is authorized to sue alone is that she was, when this action was commenced, living separate and apart from her husband by reason of his desertion of her. The evidence on this point is as follows: The plaintiff and her husband resided at Walla Walla, in the Territory of Washington. The husband failed to support her and his child by a former marriage (the support of the child and herself thus falling on her), and on this account she left him in May, 1880; that she offered to go back to him and perform her duties as a wife in January, 1881, again in May, 1881, a third time in July, 1881, and still a fourth time in October, 1882, and that he refused to take her back. When she made the offer in January, 1881, she was in Umatilla, in Western Oregon, about twenty miles from Walla Walla. That she did not return at that time, because she was sick and unable to go. Of this sickness her husband knew, and manifested no interest in her, never inquired about her, but simply refused to have anything to do with her or take her back. That if she had not been sick and unable to go she would have gone back. These offers were made in good faith, as the plaintiff testified, and there is no contradictory testimony. It further appears that in August, 1882, she received a letter from her husband asking her to come back; that in reply she wrote an amiable answer; that in October, 1882, he wrote her another letter stating that he had a home in Lewiston, Idaho, describing the house, and saying he wanted her to be with him, but before she received this letter she had another from him in answer to one from her written from the county hospital, refusing to live with her, and telling her that the county hospital was the proper place for her. This last was written after he had heard of her crippled condition, caused by the injury on which this action is based. These offers by the plaintiff to return were all made by letter, and except the first in January, 1881, written from Umatilla, were written from this State, to which she had subsequently come.

The statute (Civ. Code, art. 71, ch. 2, 1st division) on this subject defines wilful desertion as "the voluntary separation of

one of the married parties from the other with intent to desert."
(Civ. Code, § 95.) It would seem from the evidence above
given that if there was any desertion in the first place it was on
the part of the plaintiff.

It is further provided in a subsequent section (102) of the
article above cited, that if one party deserts the other, and
before the expiration of the statutory period required to make
the desertion a cause of divorce returns, and offers in good faith
to fulfill the marriage contract, and solicits condonation, the
desertion is cured. If the other party refuses such offer and
condonation, the refusal shall be deemed and treated as desertion
by such party from the time of refusal."

Did not the plaintiff comply with the requirements of this
enactment by her offers? It is said she did not, for. the reason
that the law requires a return, an actual physical return, and
this she did not do. It will be observed that the first offer was
made from Umatilla, when she was only twenty miles from the
place of his residence, and that he refused to receive her or to
have anything to do with her. Does the law require any actual
physical return when the wife, in the vicinity of her husband's
home, offers to go back and resume the performance of her mar-
ital duties, and he in effect tells her you need not come, I wish
to have nothing to do with you ? Must she perform a journey
entirely useless for any purpose when she is told you need not
come, for your coming will accomplish nothing? The other
offers to return appear to have been after the statutory period had
passed, but they tend to sustain the conclusion here reached that
the husband was unwilling to receive his wife in January, 1881,
when an offer was made within the statutory period, and that his
intent was then not to receive her at all. Entertaining these views
of the law, we are of opinion that the court below did not err in
holding that the plaintiff was competent to maintain this action.

The court erred in not sustaining the motion for a nonsuit as
to Loben Sels.

The evidence on the point of contributory negligence on the
part of plaintiff was such as must have carried it to the jury
under the rule laid down in *Fernandez* v. *Sacramento City R. R.
Co.* 52 Cal. 45, which may be regarded as settling the law on
this point in this State.

The court in its ruling did submit this question to the jury, but with an observation which, in our judgment, invaded their province.   The court on this point gave these directions: "There is a question here as to contributory negligence.   The general rule about that is, that, although a defendant may have been the prime cause of the injury, yet if the plaintiff is also guilty of what is called contributory negligence, he cannot recover. Negligence is generally understood to be the omission to do something which an ordinarily reasonable and prudent man would do under the circumstances, or the doing of something which an ordinarily prudent man would not do.   It is claimed in this case that the driving of a team at night along the road is contributory negligence.   I think that is more a question of fact than of law for you to determine.   If you believe that the plaintiff was guilty of contributory negligence in the sense in which I have defined it, she could not recover."   The court then made this remark: "I do not see that the question whether or not a person driving at a certain gait along a road known to him after night is an unreasonable act, something which an ordinary man would not do."

This was in effect telling them that there was no contributory negligence by plaintiff.   If this was so, the court should not have submitted the question to the jury at all, but should have directed them that there was no question of the kind for their consideration.   The court did right in submitting the question to the jury, but when the instruction given was qualified by the remark just above quoted, they were directed as to what the evidence proved.   The authority of the court is limited to stating the evidence and declaring the law.

The remarks of the court in relation to the contract were, we think, calculated to mislead the jury.   We refer to that part of the charge in which the jury is told, that "if, however, at the time the contract was made, it was the fair understanding and intention of all parties that the road was to be dug up for the purpose of building the levee, then I think that whoever made the contract is liable, because if those be the facts, the digging up of a public road was an inherent part of the scheme of building the levee."   If it was a part of the contract that the road was to be dug up to build the levee, Runyon would certainly be

bound. It must be understood in the sense that the contract was so made to bind Runyon. If by this is meant that the jury were to infer from some conversation with regard to where the contractor was to cut the road to build the levee and before the contract was entered into, then the jury should have been directed not to regard it unless it entered into and formed a part of the contract. The same remark applies to any conversation on this subject occurring after the contract, which was an oral one, was entered into; that it was intended by what was said on the subject that the contract should be added to in that regard. As to defendant's liability in this regard, the direction should have been that the jury must be satisfied that it was a part of the contract to build the levee with dirt taken from the road, or they were to disregard it. The law does not justify the holding a party bound for the consequences of an illegal act, from a mere suggestion in a conversation in regard to a matter of contract, unless there can be justly inferred from it an intention on his part to bind himself contractually. The understanding and intention are to be inferred from what was agreed on contractually. As to the court's refusing to give the thirty-three instructions or requests asked by defendant, on account of their length, we think it only necessary to say that the court is not justified to refuse to pass on such instructions when handed in at the time prescribed by the rule. The jury can be dismissed for a time, that the court may have an opportunity of considering the requests.

It is said that the matters of law embraced in the requests were given by the court. We do not think, as the case goes back for a new trial, it is necessary to compare the requests referred to with the instructions given by the court, to see whether such was the case, as we cannot think it will occur again in a new trial.

For the errors pointed out, the judgment and order are reversed and cause remanded for a new trial.

SHARPSTEIN, J., and MYRICK, J., concurred.

Hearing in Bank denied.