[Civ. No. 13419. First Dist., Div. One. Sept. 18, 1947.]

ABRAHAM TAHA, Appellant, v. LEON FINEGOLD et al., Respondents.

Gladstein, Andersen, Resner & Sawyer, Herbert Resner and Ewing Sibbett for Appellant.

Hoge, Pelton & Gunther, Leo V. Killon and Franklin C. Latcham for Respondents.

BRAY, J.—On December 28, 1945, plaintiff was struck by a truck belonging to the defendant partnership and driven by defendant Finegold. At about 6:50 a. m., plaintiff, a longshoreman, reported to the longshore hiring hall on Clay Street a few doors west of the Embarcadero in San Francisco, for the purpose of securing his work assignment for the day. He was told to report for work at 8 a. m. at Pier 44, which is located to the south of the Ferry Building, within walking distance of the hall. Plaintiff proceeded to the intersection of Clay Street and the Embarcadero. It was dark and raining, whether just drizzling or raining "like a cloudburst" is disputed. Plaintiff was wearing black rubber pants, black rain cape and a black hat. He testified that before crossing the intersection he looked around and saw no cars. He then started across the Embarcadero towards the Ferry Building, and when about three-quarters of the way across was struck by the truck, which was going in a northerly direction. Whether plaintiff was within or without the unmarked crosswalk is disputed. Plaintiff did not see the truck which was painted white, until it was nine or nine and a half feet from him. Whether the lights of the truck were burning is also in dispute. Plaintiff was hit by the left front fender and headlight of the truck. Defendant Finegold testified that he was proceeding in a line of traffic, there being another truck 20 feet ahead of him and another behind; that his headlights were in good condition and were on, and that he did not see plaintiff until the truck struck him. That there was other traffic on the street at the time is denied by plaintiff.

In this action for damages for personal injuries received in the accident, the jury rendered a verdict for defendants. Plaintiff does not attack the sufficiency of the evidence to support the verdict, but contends that the court erred (1) in giving certain instructions offered by defendants, and (2) in refusing to give certain instructions offered by plaintiff.

The first two instructions complained of contain the following language, the italicized portions being the portions objected to by plaintiff, and the capitalized portions being, as claimed by respondents, the saving factors. ". . . the duty of a pedestrian to be vigilant and alert, and looking for approaching traffic, AT SUCH TIMES AND PLACES AS AN ORDINARILY PRUDENT PERSON ACTING UNDER LIKE CIRCUMSTANCES WOULD DIRECT HIS ATTENTION, *is a continuing duty and such duty is not necessarily*

*met by a pedestrian,* whether in a pedestrian crosswalk or otherwise, *by merely looking once and then looking away,* UNLESS AN ORDINARILY PRUDENT PERSON ACTING UNDER LIKE CIRCUMSTANCES WOULD SO CONDUCT HIMSELF." "In order to avoid a charge of negligence, *a pedestrian is under the duty of keeping a proper lookout for vehicles travelling upon the highway* AND CONDUCTING HIMSELF IN SUCH A MANNER AS AN ORDINARILY PRUDENT PERSON ACTING UNDER LIKE CIRCUMSTANCES WOULD CONDUCT HIMSELF IN AN ENDEAVOR TO AVOID BEING INJURED."

Plaintiff contends that inasmuch as he testified that after looking to the right as he started across the street and seeing no vehicles, he did not look again in that direction until the truck was nine to ten feet from him, the giving of such instructions amounted to directing the verdict. Plaintiff thereby takes the italicized language away from its context, and completely ignores the fact that it is qualified by and dependent on other portions of the sentence in each instance (the capitalized portions hereinbefore set forth).

These additional portions were not contained in the instructions condemned in *Goodwin* v. *Foley,* 75 Cal.App.2d 195 [170 P.2d 503]. In that case the instruction, after stating that the pedestrian must look in the direction from which danger is to be anticipated, stated: "This is a continuing duty and was not met, if you so find from the evidence in this case, by looking once and then looking away." That is not a true test. The test is, would an ordinarily reasonable and prudent person, under the circumstances, not look again, and that test is included in the instructions as given in this case. In *Salomon* v. *Meyer,* 1 Cal.2d 11 [32 P.2d 631], the court used the language, "This is a continuing duty, and is not met by looking once and then looking away." It was held that this constituted an invasion of the province of the jury, and was not cured by the second part of the instruction, which five lines later stated, "If you believe from the evidence in this case that the plaintiff, in attempting to cross the street, did so without exercising that degree of care which would have been exercised by a person of ordinary prudence, *under the instructions* that I have just given you," and that such failure proximately contributed to the accident, plaintiff could not recover. (Emphasis added.) The reason this second paragraph does not cure the situation is given at page 16, where the court says:

"Although it was by this paragraph left to the jury to find whether plaintiff had attempted to cross the street without using the degree of care which would have been exercised by an ordinarily prudent person, they were told to do so 'under the instructions I have just given you', which set up continued observance as a definite and absolute standard of duty, upon the basis of an assumption that she had voluntarily placed herself in a position of probable danger, thus fixing for the jury a measure of ordinary care without requiring them to first find, as a condition of its application, that the plaintiff had exposed herself to a continuing danger."

In our case the instructions differ from the one condemned in the Salomon case and make the continuing duty of looking one that exists only if a prudent person under the same circumstances would continue to look.

While we have grave doubts that these instructions, standing alone, are erroneous, a different situation results when they are considered with the many repetitious instructions in the case. The effect of them all is to give the impression that emphasis was being placed upon the fact that the plaintiff looked only once in a certain direction, and an underemphasis upon the necessity of the jury determining whether a reasonable person, under the circumstances, would have looked only once.

In one of the above-mentioned instructions there is the following language: "A pedestrian is bound to exercise reasonable and ordinary care to anticipate the presence of vehicles having an *equal* right with such pedestrian to be there." (Emphasis added by plaintiff.) Plaintiff contends that this wording invites the jury to disregard the statutory rights of a pedestrian in a marked or unmarked crosswalk over vehicular traffic on the street. However, the instruction does not have that effect. This instruction must be read in connection with all the others, including those on the rights of a pedestrian in a crosswalk, and the respective rights of truck and pedestrian to the use of the street.

Plaintiff objects to certain other instructions, and states that they "while not as unqualified in their admonition to the jury as the first two quoted herein, nevertheless instruct the jury, in effect, that if they conclude that Taha did not keep a continuous lookout for approaching traffic as he crossed the street, the verdict should be against him." Except for the constant repetition of the same thought, as hereinafter dis-

cussed, they are correct statements of the law. Whenever anything is stated as to the pedestrian's duty it is qualified by the measure of what a reasonable person would do under the circumstances.

Plaintiff complains of two other instructions, which he admits correctly state the duty of a pedestrian to exercise reasonable and ordinary care for his own safety, but claims they fail to set forth the reciprocal duties of a motorist to exercise ordinary and reasonable care for the safety of others while proceeding along a highway, even though such motorist has the right of way. These instructions, standing alone, do not sufficiently cover the duties of the motorist, but they must be considered in connection with all of the instructions in the case, and in other instructions the court did set forth to some extent the duties of the motorist. It is not necessary that one instruction contain all of the duties of both parties, provided, of course, the reciprocal duties are sufficiently covered in the instructions as a whole.

Plaintiff also contends that these instructions give the jury the impression that the same standard of care is required of a pedestrian whether he is inside of or outside of a marked or unmarked crosswalk. The instructions are not open to that objection. The *standard of care* is the same whether a pedestrian is within or without a crosswalk. The pedestrian must, as stated in the instruction, use ordinary care. While a pedestrian within a crosswalk has certain rights, he is nevertheless required at all times to use ordinary care, and that is all these instructions state in that behalf. (*O'Brien* v. *Schellberg,* 59 Cal.App.2d 764 [140 P.2d 159].) However, like most of the instructions in the case, when taken together with the others, they overemphasize the duties of the pedestrian and as pointed out later the "in other words" portion is hardly fair.

An examination of all the instructions given shows a serious situation, and justifies the objections of plaintiff. The court gave 25 of the 29 instructions offered by defendants. Sixteen of these, in considerable length and detail, charge the jury concerning the obligations and duties of plaintiff. In only three of them is there any reference to the corresponding duties and obligations of the defendant truck driver. Plaintiff did not offer many instructions, and of those offered the court refused only two. While plaintiff cannot object to the failure of the court to give further instructions on the duties

of defendant when he failed to offer such instructions (*Howard* v. *National Ice Cream Co.*, 115 Cal.App. 639 [2 P.2d 211]), this fact does not preclude the plaintiff from objecting to the constant repetition of instructions concerning the duty of the plaintiff. Some of these 16 instructions were almost duplicates; others expressed the same principle in but slightly different language. The whole result was an unnecessary and obvious emphasis upon the duties of the pedestrian and an extremely light stress on the duties of the truck driver. Aside from the instructions on damages and those defining legal doctrines and terms, the only charges clearly favorable to plaintiff were those containing the provisions of section 560(a), Vehicle Code, and the requirement of the motorist to be vigilant and keep his vehicle under control. There are three others in which, though emphasis is placed on the duties of the pedestrian, the reciprocal duties of the motorist are mentioned. In all the remaining instructions the court repetitiously hammered away at the duties of the pedestrian.

The instructions offered by the plaintiff and given by the court were mere statements of principles of law. In contrast, in many of the instructions offered by defendants and given by the court, after stating the particular principle of law, the instructions then go on as ''formula'' instructions, 11 ending up, ''you will render your verdict in favor of the defendants,'' or, ''plaintiff will not be entitled to recover.''

Formula instructions should not be given. As said in *Tice* v. *Pacific Elec. Ry. Co.*, 36 Cal.App.2d 66, 71 [96 P.2d 1022, 97 P.2d 844], formula instructions ''are not calculated best to serve most successfully the administration of justice. Their final disappearance will improve the conduct of court trials.'' While the giving of formula instructions is not in itself prejudicial error, the giving of them here, added to the other circumstances of the case, combined to deny the plaintiff a fair trial.

One of the instructions starts out to again instruct the jury concerning the duty of the pedestrian at an intersection, and then refers to the duty of both the motorist and the pedestrian to use ordinary care, continues to the effect that neither the pedestrian nor the motorist, if either has the right of way, can exercise such right of way in an arbitrary manner, and, although it is referring to both motorist and pedestrian, it ends up, ''*In other words, the pedestrian* cannot arbitrarily assume that he has the right of way . . . and for such reason

544

alone fail to exercise'' caution. (Emphasis added.) While this is all a true statement of the law, it does not appear why ''In other words'' should refer only to the pedestrian when the court has been discussing the duties of both pedestrian and motorist. Standing alone, this instruction might not be harmful, but it is one of the many instances in which the court was overemphasizing the duty of the pedestrian. ''Instructions which are framed solely for the purpose of and which simply have the effect of emphasizing some particular portion of the evidence are not to be commended.'' (*Treadwell* v. *Nickel*, 194 Cal. 243, 262 [228 P. 25].)

It is significant that while neither of the parties to the accident saw the other until, in the case of the driver, the accident had happened, and in the case of the pedestrian, the truck was almost upon him, the duty to look and even to continue to look was time after time placed upon the pedestrian and only once upon the driver, and then only in general words, that it was his duty ''to be vigilant.'' While the failure to give more instructions concerning the duty of the driver is chargeable directly to the failure of plaintiff to offer them, still that failure does not justify the giving of so many on the same subject for the other side.

In California the giving of repetitious instructions has been condemned in a number of cases, but in none of them has the error been held to be reversible. (*Rose* v. *Tandowsky,* 80 Cal.App.2d 927, 932 [183 P.2d 347]; *Robertson* v. *Brown,* 37 Cal.App.2d 189 [99 P.2d 288]; *Wagy* v. *Brave,* 133 Cal.App. 413 [24 P.2d 209]; *Bickford* v. *Mauser,* 53 Cal. App.2d 680 [128 P.2d 79]; *Barckdall* v. *Simons Brick Co.,* 21 Cal.App. 685 [132 P. 846]; *Grillich* v. *Weinshenk,* 64 Cal. App. 474 [222 P. 160]; *Andrews* v. *Runyon,* 65 Cal. 629 [4 P. 669].) It is not the mere repetition here that is controlling. It is the duty of the trial court to fairly instruct, and while repetition alone does not make the charge unfair, where repetition exists to the extent here, coupled with the other factors, it does make the charge unfair. Moreover, it is the cumulation of a number of circumstances, of which repetition is one—the giving of formula instructions for one party when none are given for the other, the circumstances that although each party had the same duty to look, it is only the pedestrian's duty to look that is impressed upon the jury; the vast amount of overemphasis of the pedestrian's duties—that causes the unfairness in this case. No one of these circumstances, stand-

ing alone, would be sufficiently prejudicial, but taking them all together, it is apparent that the jury would be likely to get the impression that the court was telling them that a higher duty rested upon the plaintiff throughout than on the defendants.

While in several instructions the statement that, in crossing the street, plaintiff did not satisfy the law by merely looking once in the direction from which defendant approached was qualified by the yardstick of what a reasonable person would do, a reading of the instructions as a whole gives the definite feeling that the court, either intentionally or unintentionally, was telling the jury that as the plaintiff admittedly looked only once, the verdict should be for the defendants. Not that the court was commenting on the evidence, but that it was telling the jury as a matter of law that plaintiff was wrong, is the only reasonable conclusion to be drawn from the constant iteration and reiteration of the duties of plaintiff. It is a reasonable assumption that thereby there was taken from the jury one of the most important elements in the case, the question of whether or not plaintiff, as a reasonable person, was justified in not looking again to his right as he crossed the street. No such stress was placed upon the correlative duty of defendants. This very well could have been the deciding factor in the minds of the jury. Plaintiff was thereby deprived of a fair trial.

It is not necessary to discuss the two instructions concerning negligence *per se* requested by plaintiff and refused by the court other than to say that they were improper as they would have taken from the jury the question of whether or not, assuming plaintiff to have been in the crosswalk when hit (a disputed question), a reasonable person exercising reasonable care because of the night, the rain, and the dark clothes of plaintiff, might not have seen him, and hence the violation of the pedestrian's right of way might have been excusable. (*Combs* v. *Los Angeles Railway Corp.*, 29 Cal.2d 606 [177 P.2d 293] ; *Satterlee* v. *Orange Glenn School Dist.*, 29 Cal.2d 581 [177 P.2d 279].)

Defendants contend that if any error was committed in the case it is not prejudicial because plaintiff was guilty of contributory negligence as a matter of law, and therefore the jury could not have brought in any other verdict than the

one which they rendered. This is based upon plaintiff's admitted failure to look after he started across the Embarcadero and because of inconsistencies in his testimony as to whether or not he was in the crosswalk and as to the truck's lights being on. However, all these matters were for the jury. Whether he should have looked again after first looking and seeing no vehicle in sight, whether he was in the crosswalk or out of it, whether the truck's lights were lit or not, were for the jury to decide. We cannot say as a matter of law that his failure to look again under the circumstances was contributory negligence. (*White* v. *Davis,* 103 Cal.App. 531, 542 [284 P. 1086].)

The cases cited by defendants on this point are distinguishable from our case. For example, in *Gibb* v. *Cleave,* 12 Cal. App.2d 468 [155 P.2d 938], the plaintiff saw the approaching car before he left the curb. "It is not a case of having looked to his left and then miscalculated the speed of defendants' car. He testified that he made no calculations." (P. 472.) In *Ogden* v. *Lee,* 61 Cal.App. 493 [215 P. 122], plaintiff saw the lights of defendant's approaching car, mistook them for stationary lights, and walked out into the path of the oncoming car. In *Flores* v. *Los Angeles Railway Corp.,* 15 Cal.App.2d 576 [59 P.2d 856], plaintiff, without looking, stepped on to the street car tracks directly in front of an oncoming car. In *Horton* v. *Stoll,* 3 Cal.App.2d 687 [40 P.2d 603], plaintiff crossing a street away from a crosswalk "did not remember that she looked for approaching cars in the directions from which they would come, but only that she gained the impression she had plenty of time to get across the street." (P. 690.)

*Young* v. *Tassop,* 47 Cal.App.2d 557 [118 P.2d 371], in distinguishing its facts from those in the Flores case, *supra,* stated that a pedestrian crossing a street is not under a continuing duty to look to the side; he is only under a continuing duty to use ordinary care. If the question whether, under all the circumstances, he is negligent in not looking to the side is one on which there is room for an honest difference of opinion between men of average intelligence, it becomes a question of fact for the jury and not one of law. We feel that under the circumstances here that question is one upon which there can reasonably be a difference of opinion, and that the instructions of the court, as we have heretofore pointed

out, may have had the effect of preventing the jury from fairly passing on this question.

The judgment is reversed.

Peters, P. J., and Finley, J. pro tem., concurred.

A petition for a rehearing was denied October 18, 1947, and respondents' petition for a hearing by the Supreme Court was denied November 13, 1947. Shenk, J., and Schauer, J., voted for a hearing.