81 So.2d 658 (1954)
Dr. Julian F. BALDOR, and First Palma Cela Hospital, Inc., a corporation, Appellant,
v.
J.T. ROGERS, Appellee.
Supreme Court of Florida. En Banc.
October 19, 1954.
On Rehearing March 23, 1955.
Further Rehearing Denied June 3, 1955.
Benedict F. Fitzgerald, Jr., Washington, D.C., for appellant.
McEwen & Cason and James M. McEwen, Tampa, for appellee.
THOMAS, Acting Chief Justice.
The appellee was awarded a verdict of $65,000 in his action against the appellant, a physician, for malpractice in treatment of a malignancy.
*659 It was charged in the complaint that the appellee engaged the appellant to treat a growth on his lip which had been present about two months and had been diagnosed as cancer. The appellant prescribed injections for the malady. In nine months the cancer had so spread that it involved the appellee's lip and chin but the appellant had not meanwhile recommended or used X-ray, radium or surgery to alleviate the condition. The appellant then discharged the appellee. It was alleged that the appellant should have known that the lesion could not be properly treated with "shots" and should have changed the treatment when it was obvious that the condition worsened, and further that the appellant should not have "abandoned" the appellee without arranging for further treatment. It was averred that in the "vicinity" radium, X-ray and surgery were the approved methods of treating such malignancy. Lack of ordinary skill and diligence on the part of the physician were charged virtually to have ruined the patient.
The appellee, to resort to his own analysis of his complaint as given in his brief, sought "damages in three phases": (1) for not applying "the means * * * ordinarily and generally used by other physicians and surgeons of ordinary skill and learning * * * in Hillsborough County, Florida, and similar communities" in treating appellee's disease with glyoxylide; (2) for failure to change to radium, X-ray, or surgery when he realized the treatment was ineffective; and (3) for abandonment of his patient "by sending him home * * * without arranging for any other medical attention."
Numerous defenses were filed, i.e., denying malpractice, asserting the propriety of the treatment, charging contributory negligence by failing to follow directions, claiming correct treatment of the disease was not restricted to the three classical methods but that glyoxylide, Krebiozen, nitrogen mustard and other "chemical or biological treatments" could be used with success, stating that the appellee had reported that both surgery and X-ray had already been used to no avail in treating another growth on appellee's face, denying that the appellant had abandoned the appellee, but asserting, on the contrary, that he could do no more for him unless the appellee would undergo an operation in which case other physicians should perform it, and that to this the appellee agreed.
It seems to us that the gist of the whole controversy is the propriety of the treatment administered, that is the Koch method v. surgery and irradiation.
Apparently there was no doubt about diagnosis, both physician and patient knowing when they first conferred that the growth was malignant. It is plain to us, too, that no importance can be given the suggestion that failure to advise the patient, when his condition did not improve, that he should resort to surgery or irradiation amounted to malpractice. It is clear from the appellee's own testimony that he declined surgical treatment when it was suggested by a physician whom he consulted before seeing the appellant. His attitude may best be learned by quoting his statements. When asked why he had a "shot" administered by the appellant after surgery had been recommended by the other physician he replied: "I did not want to be cut on." When asked why he did not "want to be cut on", he said "For I heard so many people say it would scatter."
Nor can we find logic in the argument that abandonment of appellee by appellant would shorten the latter's life. If the premise of improper treatment is sound, then the so-called abandonment would have been to the appellee's advantage had it occurred earlier.
To repeat, we believe the pivotal question is whether a physician who uses a method other than X-ray, radium and surgery in treating cancer, by that act alone, indulges in malpractice. The appellant concedes that these three methods "have the blessing of the American Medical Association" but he contends that there is no sure cure for the ailment and no "unanimity of opinion *660 as to which of said procedures should be employed on [sic] a particular case."
This Court will take judicial notice of the supreme effort being made by the members of the medical profession and by the citizenry as well to conquer the great human killer, cancer. The fight is unrelenting, organizations against the foe are active everywhere, and drives for funds to finance the conquest are constant. The reason, of course, for the intensive campaign is that the disease is out of hand because the remedy is so far unfound.
The record in this case abounds in references by physicians to such terms as chemotherapy, hormones, synthetic chemical compounds, nitrogen mustard, folic acid, aminopterin, urethane, Krebiozen, oxidation enzymes, escharotics, bacteriophage, benzoquinoline, antigen. One of the plaintiff's own witnesses said that "17% to 18%" of the money of the American Cancer Society allocated to research is spent in the field of chemotherapy.
We do not propose to indicate what from the record in this case would appear to be the proper treatment in a given case. We are not physicians and we have no light on the subject except such as is shed by the testimony of physicians who are not in accord. But we do have the conviction that the heroic effort being made by members of the medical profession and other scientists only emphasizes that an enemy is so far being fought in the dark and that one man should not be condemned from the fact alone that he chooses a weapon that another may consider a reed.
From this record and the background on which it is superimposed, we find no reason to invoke the rule that the matter was one for the jury which the jury by its verdict settled. There could have been no clear-cut issue whether the appellant committed malpractice when he used a certain method, for no infallible cure has been discovered. Upon the absence of certain cure there is agreement so it cannot be logically declared that the jury could determine the responsibility of the appellant because of a treatment that might be, from the witnesses they chose to believe, more acceptable. If there is no certain cure and if the physician did not indulge in quackery by representing he had one, both of which were well established by testimony, then the issues raised by the pleadings in this case and the facts built around them did not justify the jury in concluding that for the appellee's misfortune the appellant should pay.
As was said by the Supreme Court of Washington in Dahl v. Wagner, 87 Wash. 492, 151 P. 1079, 1080, "the courts cannot hold a defendant in a malpractice suit to the theory of the one [opinion of physicians on a set of facts] to the exclusion of the other [contrary opinion by other physicians]." If the treatment used is approved by a "`respectable minority of the medical profession'" that would relieve the defendant of the charge of malpractice. The doctor is obligated only to use reasonable skill and he fulfills his obligation if he uses methods approved by others of the profession who are reasonably skilled. Of like effect were the holdings in Staloch v. Holm, 100 Minn. 276, 111 N.W. 264, 9 L.R.A., N.S., 712; Gresham v. Ford, 192 Tenn. 310, 241 S.W.2d 408, and Fritz v. Horsfall, 24 Wash.2d 14, 163 P.2d 148.
No doubt is cast on the respectability of the physicians who testified that they used the treatment employed by the appellant. Some of them were emphatic in their condemnation of the `classical' methods which the appellant is now charged with failure to use.
We cannot by judicial pronouncement decide a question that challenges the talent and thought of the medical and allied professions. By approving the verdict and judgment fixing responsibility on the appellant, we could come perilously close to determining as a matter of law that some treatment other than the one he used, the Koch method, was the one to become a boon to numberless sufferers. How strange would now appear a judicial decision made a few generations ago that a physician who did not bleed his patient was so callous to *661 accepted treatment that he was a malpractitioner!
The testimony of numbers of physicians who took the witness stand is in hopeless conflict about the wisdom of using the method employed by the appellant and about the efficacy of radium, X-ray and surgery. At least one of them expressed the opinion that X-ray was more detrimental than beneficial.
The record is largely devoted to an erudite discussion on the merits and demerits of various treatments by physicians eminently qualified to participate. Though it is most interesting and enlightening, it is not too convincing because of the divergence of views. On one thing they agree: there is not yet a certain cure.
To our minds the testimony lacks much as a basis for a verdict that the appellant should compensate the appellee.
The appellant has presented many questions but a decision of the first in his favor makes decisions of the others unnecessary.
The verdict requested by the appellant should have been directed so the judgment in favor of appellee is
Reversed.
SEBRING, HOBSON and MATHEWS, JJ., and HERIN, Associate Justice, concur.
TERRELL and DREW, JJ., dissent.
DREW, Justice (dissenting).
The complaint in this cause sought damages upon the three separate theories set forth in page two [81 So.2d 659] of the opinion by Justice THOMAS, viz.:
1. That the treatment given was not proper;
2. That the treatment given should have been discontinued and another adopted after it showed no favorable results; and
3. That the defendant abandoned the plaintiff.
It is not disputed that a physician may become liable in damages under any one of the three theories upon which the complaint is based.
The opinion by Justice THOMAS effectively disposes of the first of the foregoing theories of liability and I am wholly in accord with that opinion as it is limited to the disposition of the first proposition. I am entirely in accord with the views there expressed that the record in this case justified the conclusion that, as a matter of law, the administration of the Koch treatment to the plaintiff in this cause did not by that act alone constitute malpractice. If the complaint had been based upon the premise alone that the treatment given was improper, I would concur in the opinion and judgment by my able brother Justice THOMAS, but the opinion and judgment, as prepared, leave undetermined and undecided two major phases of the litigation. I think there was competent and substantial evidence in the record to sustain the judgment rendered if the jury chose to believe, as it undoubtedly did, that the treatment given should have been discontinued after it became apparent that the condition being treated was becoming aggravated and that the failure to discontinue such treatment resulted in damage to the plaintiff. There is also competent, substantial evidence in the record, which the jury could have and apparently did believe, that the defendant abandoned the plaintiff. I, therefore, respectfully dissent and would affirm the judgment.
TERRELL, J., concurs.

On Rehearing
HOBSON, Justice.
The history and facts of this case are set forth in the original opinion prepared by Mr. Justice THOMAS. The majority entirely agrees with, and reaffirms, the pronouncements therein contained to the effect *662 that Dr. Baldor's use of the Koch treatment did not per se breach his professional obligation to apply "the means * * * ordinarily and generally used by other physicians and surgeons of ordinary skill and learning * * * in Hillsborough County, Florida, and similiar communities."
Upon a careful study of this case in the light of the petition for rehearing we have reached the conclusion that the jury was justified in arriving at its verdict upon the ground that Dr. Baldor, being a physician, was in a position where he knew or should have known that the treatment which he had administered for a period of time was failing to arrest the disease, and that the patient's condition was growing steadily and permanently worse. Quite understandably, the plaintiff, a farmer of advanced age and meager education, did not want to be "cut on" if surgery could be avoided, and by the same token he would have resisted treatment with radioactive substances, if there was hope of relief by the use of means consisting of nothing more drastic than "shots". This is the hope which Dr. Baldor held out to the plaintiff. And we are now convinced that upon this record the jury was authorized to conclude that Dr. Baldor breached his duty to inform the plaintiff, at the earliest possible time, that this hope had failed and the only prospect of recovery lay with other treatments.
All of the medical testimony emphasizes the fact that time is of the essence in treating cancer. It is the doctor, and not the patient, who holds himself out to be, and must be, best equipped to detect the warning signs. And when treatment is ineffective, it is the doctor who must know it first and recommend other action. The plaintiff in this case was not a recalcitrant patient. His ultimate submission to surgery proves that he did not consider it an unthinkable alternative when he was at last convinced that the Koch treatment had failed. We think that it was within the province of the jury to conclude that the factual basis upon which the plaintiff finally acted to his benefit should have been provided to him by Dr. Baldor at an earlier date, and that the doctor should not have discharged his patient "by sending him home  without arranging for any other medical attention", or different treatment, or even suggesting the advisability therefor.
It is our conclusion that the judgment from which this appeal was effected should be, and it is hereby,
Affirmed.
TERRELL and DREW, JJ., and HERIN, Associate Justice, concur.
MATHEWS, C.J., and THOMAS and SEBRING, JJ., dissent.