187 So.2d 401 (1966)
Ethel Stone LEVY, As Executrix of the Estate of Howard Levy, Deceased, and Ethel Stone Levy, As Widow of Howard Levy, Deceased, Appellants,
v.
Michael J. KIRK, M.D., Appellee.
No. 65-871.
District Court of Appeal of Florida. Third District.
June 7, 1966.
Milton E. Grusmark, Miami Beach, for appellants.
Carey, Dwyer, Austin, Cole & Stephens, Miami, for appellee.
*402 Before PEARSON, CARROLL and BARKDULL, JJ.
PER CURIAM.
This case calls for review of an adverse summary final judgment rendered in favor of the defendant medical doctor in a malpractice action.
The complaint alleged two causes of action: 1. Wrongful death and, 2. Negligence [medical malpractice]. The summary final judgment appears to have been rendered because, among other things, the statute of limitations had run as to the wrongful death and no triable issue of negligence had been demonstrated. We reverse.
It affirmatively appears from the record, or at least there is a triable issue as to this fact, that the defendant was without the State of Florida between the occurrence of the cause of action and the commencement of the proceeding. Therefore, if he was in fact out of the State, the provisions of § 95.06 Fla. Stat., F.S.A., would toll the running of the statute of limitations.
Generally, in a medical malpractice case, it is necessary to have [either by deposition, affidavit, pleading, or otherwise] sufficient allegations of fact which would be admissible in evidence to establish whether or not the physician performed his duty of care in a manner commensurate with the standards of the community. See: Couch v. Hutchison, Fla.App. 1961, 135 So.2d 18; Cook v. Lichtblau, Fla.App. 1962, 144 So.2d 312; Holl v. Talcott, Fla.App. 1965, 171 So.2d 412. However, in the instant case, where the charge is in the abandonment of the patient after causing his admission into the hospital and the prescribing of certain medications, examinations, tests, etc., it is apparent from the hospital records and from the doctor's own admissions that he failed to personally observe the patient [although he was in the hospital] and he failed to review the results of the tests and examinations for several days.[1] Therefore, even though these facts are not contradicted, they present a triable issue as to whether or not this alleged abandonment was the proximate cause of the demise of the deceased. See: Vihon v. McCormick, Fla.App. 1958, 109 So.2d 400; Smith v. City Products Corp., Fla.App. 1962, 147 So.2d 590; and also Town of Mount Dora v. Bryant, Fla.App. 1961, 128 So.2d 4, wherein the following is found:
* * * * * *
"* * * It is worthy of constant judicial observance that even where the physical facts are apparently uncontradicted it does not necessarily follow that there is no genuine material issue of factual character for further determination. This is so because in some circumstances uncontradicted facts are susceptible of conflicting factual inferences neither of which should be prejudged unreasonable as a matter of law. In such case the evidence should be submitted to the jury under proper instructions as to the law. * * *"
* * * * * *
It is not absolutely necessary to have expert testimony to determine a medical malpractice case. See: Montgomery v. Stary, Fla. 1955, 84 So.2d 34; Dohr v. *403 Smith, Fla. 1958, 104 So.2d 29; Atkins v. Humes, Fla.App. 1958, 107 So.2d 253; 141 A.L.R., page 12 and cases cited therein. It is the function of a jury to determine whether the neglect by a physician to attend a patient was the proximate cause of the patient's death or complicated illness. See: Saunders v. Lischkoff, 137 Fla. 826, 188 So. 815; Baldor v. Rogers, Fla. 1954, 81 So.2d 658, 55 A.L.R.2d 453, 13 A.L.R.2d, p. 14, Anno. and cases cited therein. See also: 57 A.L.R.2d 432, Anno.: Physician-Abandonment of Case; 25 Fla.Jur., Physicians and Surgeons, §§ 81, 88, 89.
Therefore, for the reasons above stated, the summary final judgment here under review is hereby reversed, and this matter is returned to the trial court for further proceedings not inconsistent herewith.
Reversed and remanded, with directions.
NOTES
[1] The doctor had treated the deceased previously for a heart condition and, in fact, had caused him to be hospitalized for approximately one month in February and March, 1962 for congestive heart failure. At the time the doctor caused the deceased to be admitted to the hospital in January, 1963, he ordered among other things electrocardiogram and X-rays. The X-rays "showed a markedly dilated heart." The electrocardiogram "showed premature ventricular contractions, digitalis effect.", and although the doctor was in the hospital he did not see the patient for a period of three days subsequent to his admission. When he did examine him and the results of the tests, he noted "started O[2] [oxygen]  wonder if pt. has had another coronary." Several days later the patient expired from a coronary occlusion.