James Emerson LEECH, Plaintiff,

v.

Floyd B. BRALLIAR, M.D. and Marcella Bralliar, husband and wife, Defendants.

No. Civ. 4154 Phx.

United States District Court
D. Arizona.

Sept. 21, 1967.

**898**

Samuel Langerman, of Langerman, Begam & Lewis, Phoenix, Ariz., for plaintiff.

John Westover, of O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, Phoenix, Ariz., for defendant.

## AMENDED FINDINGS OF FACT AND CONCLUSIONS OF LAW

MUECKE, District Judge.

This cause came on for trial without a jury and the Court having heard the evidence, finds the facts and states the conclusions of law as follows:

### FINDINGS OF FACT

1. Plaintiff, James Emerson Leech, suffered injuries as a result of an automobile accident occurring on July 3, 1958, and on that date, employed the defendant, Floyd B. Bralliar, M.D., to render medical services for the treatment of his injuries.

2. Plaintiff's injuries from the automobile accident of July 3, 1958 consisted of moderate sprains of the neck and back, commonly referred to as "whiplash" injuries.

3. Defendant recommended a method of treatment called prolotherapy to plaintiff for his injuries within a few days of plaintiff's first visit to defendant. Plaintiff did not, at this time, agree to this treatment.

4. Prolotherapy as a method of treatment was first prominently used and named by George Stuart Hackett, M.D., F.A.C.S., of Canton, Ohio, who in 1956, published a book about prolotherapy, wherein he described this method of treatment.

5. This method of treatment, called prolotherapy, consists of injecting ligamentous attachments with a sclerosing or proliferating solution for the purpose of creating a proliferation of tissue at the attachment of ligaments to the bone. The purpose of injecting this solution into the ligamentous attachments is to create a "weld" of torn ligaments.

6. Sometime around 1957, the defendant, Doctor Bralliar, read Doctor Hackett's book and, based upon what he learned therefrom, began to administer prolotherapy to some of his patients. Thereafter, Doctor Bralliar visited Doctor Hackett's office in Canton, Ohio and,

while he was there, prolotherapy injections were administered to him by Doctor Hackett. At that time, Doctor Hackett explained to Doctor Bralliar how to administer these injections. Doctor Bralliar corresponded with Doctor Hackett from time to time and purported to follow Doctor Hackett's manner of treatment. The instructions which Doctor Bralliar gave to his patients and the back exercises suggested by him for prolotherapy patients are taken verbatim from Doctor Hackett's book.

7. Plaintiff's whiplash injuries required him to lose no work between the dates of July 3, 1958 and August 1, 1958. During this period, plaintiff was not hospitalized nor did he take any narcotics.

8. From July 3, 1958 to August 9, 1958, plaintiff was treated with conservative methods by defendant, including manipulation of the injured area.

9. On August 9, 1958, defendant, following defendant's recommendations to plaintiff and with plaintiff's permission, instituted prolotherapy treatment of plaintiff's injuries.

10. Defendant described prolotherapy to plaintiff as the only type of treatment known to the medical profession which was specifically designed for treatment of his type of injury and that it was the best available. Defendant further advised plaintiff that defendant had personally used this treatment and that approximately sixty-five physicians in the United States were using this method of treatment, and that success by the use of this treatment was about 85%. Defendant further advised plaintiff that the treatment was very painful and that good results might be expected.

11. While plaintiff was informed by defendant, as described in Finding of Fact No. 10, the plaintiff was not informed as to defendant's deviations from the manner of treatment prescribed by Doctor Hackett, as these deviations are set forth in Finding of Fact No. 16.

12. Defendant continued to treat plaintiff according to his method of pro-lotherapy for the period from August 9, 1958 to January 8, 1960. Thereafter, defendant treated plaintiff with other means on February 9 and 12, 1960 and April 26, 1960.

13. The defendant injected over 200 different ligaments in the course of his prolotherapy treatment of the plaintiff during the period from August 9, 1958 to January 8, 1960. Usually, each treatment consisted of a number of injections into one ligamentous attachment. On a number of occasions, areas which had been previously injected were reinjected within periods of a few days or from one to four weeks from the time of original injections. At the same time these injections were being given, defendant manipulated the neck and back of the plaintiff in the areas which were also being injected.

14. Prolotherapy, as espoused by Doctor Hackett at the time defendant instituted its use upon plaintiff, was recognized as an appropriate method of therapy by a small minority of physicians in the United States and was a method of treatment they themselves used. This minority of physicians has not been shown to be other than respectable physicians.

15. During the course of therapy by the defendant, he prescribed various types of medication, including narcotics, which were used by the plaintiff. The last prescription for narcotics was written for the plaintiff by the defendant in February, 1960. Plaintiff was instructed and advised by defendant to use such narcotics in connection with the pain resulting from the prolotherapy injections and that such use was preferable to permitting the pain to grow too intense.

16. Defendant varied his method of treatment of the plaintiff by prolotherapy from that recommended by Doctor Hackett in the following particulars:

a. Defendant started treating plaintiff with prolotherapy five weeks after the injury whereas Doctor Hackett recommended no treatment by pro-

lotherapy for a minimum of three months. The three month period is recommended to allow normal healing of injured tissue to take place and to permit treatment by conservative or conventional methods.

b. Defendant diagnosed plaintiff as having torn ligaments at a time when plaintiff had muscle spasms, and Doctor Hackett had advised that it is impossible to diagnose torn ligaments when muscle spasms are present.

c. Defendant repeated injections in areas previously injected without waiting a minimum of six to eight weeks, contrary to Doctor Hackett's statement that such a wait is necessary because it took that long for the reaction to subside and for the proliferating solution to build up new tissue.

d. Defendant used a solution for his injections which was 50% stronger in terms of sclerosing material than that recommended by Doctor Hackett.

e. Defendant manipulated plaintiff's neck and back in the course of treatment with prolotherapy. This was contrary to Doctor Hackett's express warning that manipulation was contra-indicated because the new cells were weak and the anticipated benefits would be less if the cells were subjected to strain before they were strong.

17. All of the variations from Doctor Hackett's method of treatment by the plaintiff, as set forth in Finding of Fact No. 16, did not have the approval then—at the time of the plaintiff's treatment by the defendant—or since then, by the respectable minority of the medical profession who recognize prolotherapy as a proper method of treatment.

18. Prolotherapy, as a method of treatment, either as espoused by Doctor Hackett or as practiced by the defendant in his treatment of the plaintiff, has not been accepted as a proper method of treatment by the medical profession generally, other than as set forth in Finding of Fact No. 14.

19. As a result of the prolotherapy treatments, as these were administered by the defendant to the plaintiff, a scarring or fibrosing or sclerosing of the soft tissue of the neck and back has occurred, which is permanent in nature and which has caused, is causing, and will cause severe and intractable pain to plaintiff. Further, the injections themselves were very painful. As a result of the pain resulting from the injections and scar tissue in plaintiff's back and neck, the plaintiff was and is under great stress.

20. As a result of this continuing pain and stress, plaintiff has developed gastrointestinal complaints; including a peptic ulcer first diagnosed by the defendant in October, 1959. Such gastro-intestinal complaints were not present before plaintiff's treatment by the defendant, but were caused by the pain, tension, stress, and medication concomitant with defendant's use of prolotherapy upon the plaintiff.

21. From the time plaintiff first started receiving prolotherapy treatment as administered by the defendant, until the present time there has been no period of time when the plaintiff did not require substantial pain-relieving medication to control, or attempt to control, the pain which resulted from the problems treated by the prolotherapy treatments. From the period starting approximately July, 1964 to the present time, plaintiff has been taking large amounts of narcotics and is at the present time addicted to narcotics. His use of narcotics has been and is being prescribed for the plaintiff by his doctors because such medications are necessary in order to control the pain from which he now suffers and from which he has been suffering since July, 1964. This pain and plaintiff's consequent addiction to narcotics was proximately caused by the prolotherapy treatments as administered to the plaintiff by the defendant.

22. As a result of the pain in his back and neck, and of his gastro-intestinal problems, and of the pain and stress and tension connected with these problems, it has been necessary for the plaintiff to be

hospitalized on a number of occasions for treatment and for surgery. These hospitalizations included one in December, 1960, when the plaintiff underwent surgery by Doctor Kenneth Abbott, a neurosurgeon. This surgery consisted of an excision of two cervical intervertebral discs and fusion of the vertebral bodies at the levels at which the discs were excised. Subsequent treatment and surgeries have been made necessary by the gastro-intestinal problems. The treatment of and surgery for all the above were necessitated because of the prolotherapy treatments as administered to the plaintiff by the defendant.

23. At the time plaintiff was receiving prolotherapy and other treatments from the defendant, the plaintiff had complete confidence in the defendant and was not aware of any injuries or potential injuries from the prolotherapy treatment. Plaintiff first learned of possible injuries in May or June of 1960 when he was advised by Doctor Eisenbeiss to discontinue the prolotherapy treatments.

24. This lawsuit was commenced April 24, 1962.

25. The plaintiff executed a release to one Clark Kaufman, who allegedly caused the accident of July 3, 1958, which is the accident here involved wherein the plaintiff was injured and went to the defendant for treatment. The release to Kaufman executed by the plaintiff, was made with and upon defendant's advice as to plaintiff's medical condition. It was in no way intended to release defendant of any claim set forth in this lawsuit. The release was not intended to be nor was it given in full satisfaction for any claim plaintiff had against the defendant. At the time the release was executed, the plaintiff was unaware of any injury to him resulting from the prolotherapy treatment as administered by the defendant.

26. The plaintiff was involved in another automobile accident on August 24, 1961. He sustained minor and temporary injuries in this accident. Plaintiff settled this claim with his own insurance carrier for $5,000.00 under an "uninsured motorist clause" in his policy. The payment was not made in return for any release of any tort-feasor nor for any release in this action.

27. When the plaintiff first saw the defendant after the accident of July 3, 1958, the plaintiff was a man of approximately thirty years of age, in general good health, whose only previous serious illnesses included an appendectomy and one incidence involving kidney stones. He was gainfully employed as a highway patrolman for the Arizona Highway Department.

28. At the time of the trial in this case, the only type of job plaintiff could hold, or which he will be able to hold in the future, is a job for some agency or institution which is willing to employ him despite his unreliability and his frequent absences from work due to his medical and health problems.

29. Plaintiff sustained a moderate whiplash injury in the automobile accident of July 3, 1958. Such an injury did not produce the deterioration in plaintiff's health which was present at the time of trial.

30. At the time of his trial, he was, and had been for some seven years previously, in daily, constant pain from the condition of his back and neck, and as a result of his gastro-intestinal problems. It is reasonably probable that he will continue to have such pain on a permanent basis. It is further reasonably probable that psychiatric treatment will not cure him of his narcotic addiction. This change in the health of the plaintiff was proximately caused by the prolotherapy treatments as administered by the defendant.

31. The plaintiff has heretofore incurred charges in connection with the medical treatment and care of plaintiff because of his injuries which were proximately caused by defendant's negligence up to and including June 15, 1965 as follows: $4,248.00 for doctor bills; $5,568.-28 for hospital bills; and $3,213.92 for drug bills. An additional expense of $318.77 was incurred for drugs and doctor bills from June 15, 1965 to September

16, 1965. All of these expenses totaled $13,348.97.

32. The plaintiff further, as a result of his drug addictions and gastro-intestinal problems caused by defendant's negligence, will require extensive treatment, hospitalization, nurses, medicines, outpatient treatment, and other services, all for a total of $50,000.00.

33. As a result of the change in the plaintiff's health, proximately caused by the defendant's negligence, plaintiff has sustained a loss of earnings, which up to the date of trial amounted to $12,177.00. His loss of future earnings, based on his employment with the Highway Patrol up to the age of fifty-five, is in the amount of $75,000.00 and based on his retirement at age fifty-five and upon his reasonable life expectancy of seventeen more years, an additional amount of $30,000.00.

34. The plaintiff by reason of the defendant's negligence has sustained general damages for pain and suffering already sustained and for that which it is reasonably probable he will sustain in the future in the amount of $130,000.00.

35. Globe, Arizona and Cottonwood, Arizona are communities similar to Wickenburg, Arizona.

## CONCLUSIONS OF LAW

1. Prolotherapy as a method of treatment, as espoused and used by Doctor Hackett and a respectable minority of physicians in the United States, cannot be said to be an inappropriate method of treatment or to be malpractice as a matter of law even though it has not been accepted as a proper method of treatment by the medical profession generally.

2. A release of an alleged tortfeasor for injuries does not release a physician for his negligence in treating those injuries unless it was intended to release the physician.

3. The release executed by plaintiff to Clark Kaufman, releasing said Kaufman from any further liability for injuries sustained by plaintiff in the accident of July 3, 1958, did not release the defendant, Doctor Bralliar, from any claims made herein.

4. An injured party's compensation under an uninsured motorist release clause in his own insurance policy does not release a doctor for malpractice claims nor can the doctor be credited with such compensation on a verdict against him for malpractice, as such compensation is from a collateral source.

5. The agreement between the plaintiff and Farmers Insurance did not release the defendant herein, nor is he entitled to any credit for the sums paid to the plaintiff by Farmers Insurance.

6. The plaintiff's cause of action is not barred by the Arizona Statute of Limitations (§ 12–542, A.R.S.). The statute of limitations in a cause of action for malpractice does not begin to run until the plaintiff has discovered the fact that the defendant doctor has committed malpractice.

7. The defendant was not guilty of actual or constructive fraud in his treatment of the plaintiff.

8. The law demands that one holding himself out as a medical practitioner possesses the degree of skill and knowledge possessed by the average member of the medical profession in good standing in the same or similar community in which he practices under similar circumstances and about the same time. He is also obliged to apply his skill and knowledge with ordinary and reasonable care. The defendant, because of his deviations or variations from the accepted prolotherapy method of treatment as practiced by Doctor Hackett and a respectable minority of physicians in the United States, failed to apply with reasonable and ordinary care, that skill and knowledge the law requires him to possess and, therefore, was guilty of malpractice in that he negligently treated the plaintiff and this negligence proximately caused the injuries the plaintiff has claimed.

9. Prolotherapy as practiced by the defendant in his treatment of the plaintiff was not proper medical practice

anywhere as no physician would have practiced prolotherapy as the defendant did in treating the plaintiff. The defendant's treatment of the plaintiff by his method of prolotherapy constitutes malpractice in that it was an untested method of treatment and might or could cause injury to the patient and in fact did cause injury to the plaintiff.