[Civ. No. 16499. Fourth Dist., Div. One. Aug. 3, 1978.]

JOHN L. HUBBARD, Plaintiff and Respondent, v.
TRAVIS H. CALVIN, JR., Defendant and Appellant.

**COUNSEL**

McInnis, Fitzgerald, Rees & Sharkey and Reeve J. Jacques for Defendant and Appellant.

Harney & Moore and James J. Pagliuso for Plaintiff and Respondent.

**OPINION**

**COLOGNE, J.**—A jury returned a $77,000 verdict in favor of plaintiff John L. Hubbard after trial of Hubbard's complaint for damages for medical malpractice against defendant Travis H. Calvin, Jr., M.D. Calvin appeals the judgment entered on the verdict after the trial court denied his motions for mistrial and for new trial.

The action arose out of Calvin's June 1972 decision to perform, and his technique in performing, a cerebral angiogram, also called an arteriogram, on Hubbard who had an electric shock in March and was experiencing vertigo. When Hubbard awoke from the general anesthetic administered for the arteriogram he was paralyzed on his left side. The severity of the paralysis subsided so that by the time of trial, four years after the arteriogram, he was able to walk with the use of a leg brace.

█ Calvin contends the court reversibly erred in giving Hubbard's requested special instruction reading: "If you find that the technique used by the defendant, Calvin, in the performance of the arteriogram was not approved by a respectable minority of neurosurgeons in 1972, you are instructed to find that the defendant, Calvin, violated his duty to use the care and skill ordinarily exercised in like cases by reputable neurosurgeons practicing under similar circumstances."[1]

The giving of this instruction requires a reversal for two reasons. It is not a correct statement of the law and it deprived Calvin of his right to a jury determination of whether he was negligent.

First, the instruction is founded upon an erroneous concept of standard of care in medical malpractice cases. "The courts require only that physicians and surgeons exercise in diagnosis and treatment that reasonable degree of skill, knowledge, and care ordinarily possessed and exercised by members of the medical profession under similar circumstances." (*Bardessono* v. *Michels,* 3 Cal.3d 780, 788 [91 Cal.Rptr. 760, 478 P.2d 480, 45 A.L.R.3d 717].) This correct definition of the duty of care makes no reference to a "respectable minority" of physicians practicing the medical specialty Calvin practiced, neurosurgery.

The out-of-state authorities cited by Hubbard in support of the instruction deal with alleged negligence in using methods of treatment for diseases having no known cure, where the treatment method is alleged to have been unnecessary (*Baldor* v. *Rogers, supra,* 81 So.2d 658 (cancer); *Hood* v. *Phillips* (Tex.Civ.App. 1976) 537 S.W.2d 291 (emphysema)) or not practiced according to an accepted treatment method used by a respectable minority of physicians (*Leech* v. *Bralliar* (D.Ariz. 1967) 275 F.Supp. 897 ("whiplash")). Although Hubbard alleged and presented evidence that Calvin's use of the arteriogram was unnecessary, there is no other resemblance of *Hubbard* v. *Calvin* to the out-of-state cases.

---

[1]Hubbard presented the instruction to the trial court with a citation to BAJI No. 6.00, relating to the general standard of care for physicians and surgeons, which the court also gave. Hubbard noted the BAJI No. 6.00 instruction was altered and he cited a Florida case, *Baldor* v. *Rogers* (Fla. 1954) 81 So.2d 658 [55 A.L.R.2d 453], 660, dealing with alleged medical malpractice in the treatment of a disease with no known cure, cancer, where the court said: ". . . 'the courts cannot hold a defendant in a malpractice suit to the theory of the one [opinion of physicians on a set of facts] to the exclusion of the other [contrary opinion by other physicians].' If the treatment used is approved by a ' "respectable minority of the medical profession" ' that would relieve the defendant of the charge of malpractice. The doctor is obligated only to use reasonable skill and he fulfills his obligation if he uses methods approved by others of the profession who are reasonably skilled. . . ."

More important, however, is the fact the out-of-state cases did not deal directly with instructing the jury and, to the extent they can be interpreted as doing so, they did not state a rule in language which even remotely resembles the language of the questioned instruction in the case before us. Both *Baldor* v. *Rogers, supra,* 81 So.2d 658 (see fn. 1 *ante*) and *Hood* v. *Phillips, supra,* 537 S.W.2d 291,[2] emphasized use of the traditional standards for measuring malpractice. Both cases, too, phrased their statements about a respectable minority of physicians in terms exculpating the physician from a finding of negligence if the physician uses acceptable procedures as espoused by the respected minority. The two cases cited do not state the rule in the inculpatory manner of the instruction given here, namely, that he is guilty of negligence if he does not follow his colleagues. That inculpatory language should not be read into the statements in the cases, for the statements must be read in the context of applying treatment methods to the incurable diseases involved ("that would relieve the defendant of the charge of malpractice" [see fn. 1]; the "physician is not guilty of malpractice" [see fn. 2]).

The negative or reverse implication given by Hubbard to the statements in the out-of-state cases, as reflected in the instruction, does not follow. Likewise, the federal district court case of *Leech* v. *Bralliar, supra,* 275 F.Supp. 897, does not support the instruction in that the court there merely incorporates the "respectable minority" language into its conclusions the defendant breached the general standard of care applicable to physicians. In short, the cases do not serve as authority for giving the instruction the jury heard in the case before us and it was error to give that instruction (see *Pullen* v. *Heyman Bros.,* 71 Cal.App.2d 444, 451-453 [162 P.2d 961]).

The second aspect of error in giving the instruction is it consists of a formula directing the jury to find Calvin was negligent upon reaching the otherwise unguided and easy to reach conclusion of nonapproval of the technique by the "respectable minority." (See *Hood* v. *Phillips, supra,* 537 S.W.2d 291, 293, 295-296.) ■ While formula instructions do not constitute prejudicial error if they state all the elements involved in the

[2]"[A] physician is not guilty of malpractice where the method of treatment used is supported by a respectable minority of physicians, as long as the physician has adhered to the acceptable procedures of administering the treatment as espoused by the minority.

"As in other cases of this nature, the determination should be predicated upon ordinary negligence—what a reasonably prudent physician would do under the same or similar circumstances. [Citations.] We see no reason for the standard to be otherwise for an action for unnecessary surgery must be measured by traditional malpractice evidentiary standards." (*Hood* v. *Phillips, supra,* 537 S.W.2d 291, 294.)

case or if other specific instructions cover elements omitted from the formula instruction (*Bertero* v. *National General Corp.,* 13 Cal.3d 43, 58 [118 Cal.Rptr. 184, 529 P.2d 608, 65 A.L.R.3d 878]), formula instructions should be avoided (*Taha* v. *Finegold,* 81 Cal.App.2d 536, 543 [184 P.2d 533]). When the formula instruction is based on an incorrect or unauthorized premise, as here, it constitutes reversible error even if a correct instruction is given in another part of the instructions as a whole (*Spear* v. *Leuenberger,* 44 Cal.App.2d 236, 249 [112 P.2d 43]).

■ Since it seems probable the jury's verdict may have been based on the erroneous instruction, prejudice appears and this court will reverse without speculating upon the basis of the verdict (see *Henderson* v. *Harnischfeger Corp.,* 12 Cal.3d 663, 670 [117 Cal.Rptr. 1, 527 P.2d 353]).

■ In this connection there was additional error in the trial court's incorrect first reading of BAJI No. 6.30, relating to the use only of expert witness testimony for determining the standard of care for physicians. The trial court told the jury it must *not* determine the standard only from the expert witness testimony.[3] This was contrary to law (see *Cobbs* v. *Grant,* 8 Cal.3d 229, 236-237 [104 Cal.Rptr. 505, 502 P.2d 1]; and see Witkin, Cal. Evidence (2d ed. 1966), § 432, p. 389). Although the court later gave a correct version of BAJI No. 6.30 upon rereading the instructions at the jury's request, the presence, then absence of the "not" in the instruction created a direct conflict as to an important aspect of the case and could only have confused the jury (see 4 Witkin, Cal. Procedure (2d ed. 1971) Trial, § 241, pp. 3055-3056).

■ For purposes of retrial we feel compelled to express our view on the impropriety of the trial court's also having given, over Calvin's objection, Hubbard's requested special instruction reading: "You are to find that the arteriogram performed by the defendant, Travis Calvin, on June 2nd, was a substantial factor in causing injury to the plaintiff, John Hubbard."

This instruction flies in the face of the very next instruction given telling the jury the plaintiff has the burden of establishing by a preponderance of the evidence all of the facts necessary to prove the issue of legal cause, among other issues. Although the court gave a conditional

---

[3]The court gave the following instruction: "You must not determine the standard of professional learning, skill and care required by the defendant only from the opinions of physicians and surgeons including the defendant who have testified as expert witnesses as to such standard."

res ipsa loquitur instruction which may raise an inference that a legal cause of the occurrence was some negligent conduct on the part of the defendant, this is a separate theory for finding legal cause. When the jury was instructed the arteriogram performed by Calvin was a substantial factor in causing Hubbard's injury, it was told, in effect, to find the element of legal cause was present (see *Flournoy* v. *State of California,* 275 Cal.App.2d 806, 813 [80 Cal.Rptr. 485]; and see BAJI No. 3.76, "A legal cause of an injury is a cause which is a substantial factor in bringing about the injury"). The court should not take the issue of legal cause from the jury by giving the instruction stating the arteriogram was a substantial factor. That should be left for the jury to decide.

In light of the conclusions we have reached it is unnecessary to address Calvin's other contentions except to comment it was inappropriate for Hubbard's counsel to have asked the question about calling an attorney for the hospital to oppose a subpoena of records of Calvin's studies on other patients when the trial court had earlier ruled such records inadmissible (see Evid. Code, § 913, subd. (a); and see *Cordi* v. *Garcia,* 39 Cal.App.2d 189, 197 [102 P.2d 820]). This conduct should not be repeated.

Judgment reversed.

Brown (Gerald), P. J., and Staniforth, J., concurred.

A petition for a rehearing was denied August 18, 1978, and respondent's petition for a hearing by the Supreme Court was denied September 27, 1978.